Bobby J. BURKHAM, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–157.

Court of Criminal Appeals of Oklahoma.

July 18, 1975.

Ogden, Ogden & Board, Guymon, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Jim Patton, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Bobby J. Burkham, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Texas County, Case No. CRF–74–41, for the offense of Knowingly Concealing Stolen Property, After Former Conviction of a Felony. His punishment was fixed at three (3) years in the State Penitentiary, and from said judgment and sentence a timely appeal has been perfected to this Court.

On February 23, 1974, Mr. Jerry Gass, a field inspector for the Texas and Southwestern Cattle Raisers Association, contacted the sheriff of Guymon, Oklahoma. Mr. Gass believed he had a substantial lead in a case of stolen hogs which he was investigating. After contacting the sheriff, four officers and Mr. Gass proceeded to the farm leased by the defendant. Mr. Gass stated he saw, from the county road, a sow some distance from the Burkham farm. From that vantage point he could not tell if the sow was the stolen property which he sought. After arriving at the house, Undersheriff Luellen proceeded to the door and talked with Mrs. Burkham, asked who she was and if Mr. Burkham was at home. Officer Luellen returned to the car and they started to leave. As the car turned, Mr. Gass gained a better view of the property, causing them to stop again. Undersheriff Luellen returned to the house and asked permission to look at the hogs.

Undersheriff Luellen testified to the facts previously stated by Mr. Gass. He further stated that he asked permission of Mrs. Burkham to view the hogs, which permission she granted. Nonetheless, when they returned in Guymon, Mr. Borth, owner of the stolen hogs, was contacted. Also, a warrant was issued for the arrest of Bobby J. Burkham.

The testimony of Sundie Burkham, wife of the defendant, varied substantially from that of Mr. Gass and Officer Luellen. She related she was in the barn when she heard the dogs barking. When she came from the barn she observed Mr. Gass and Officer Luellen looking at the hogs. She stated at that time neither had asked permission to view the hogs, but when she first observed them they were already viewing the hogs. She specifically denied giving them permission and suggested they wait until her husband returned. At the conclusion of Mrs. Burkham's testimony, the defense rested.

 In his only assignment of error, defendant argues that the trial court erred in overruling his Motion to Suppress the evidence obtained by the officers during their warrantless search of his premises as described above. We note at the outset the familiar rule that a warrantless search, absent certain exceptions, is per se unreasonable and in contravention of the Fourth Amendment; however, an equally familiar exception to that rule is that such a search is not unreasonable where preceded by a free and voluntary consent. The question before us, then narrows to whether consent to search jointly-occupied premises, here a leased farmhouse and curtilage, given by a spouse can operate as a constitutional basis for a search as against the nonpresent,

nonconsenting spouse.[1] We believe the question can be answered in the affirmative in accord with what we perceive to be the modern trend of authority as set forth by the United States Supreme Court in *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242, 248 (1974). Therein, Mr. Justice White stated:

"It has been assumed by the parties and the courts below that the voluntary consent of any joint occupant of a residence to search the premises jointly occupied as valid against the co-occupant, permitting evidence discovered in the search to be used against him at a criminal trial. This basic proposition was accepted by the Seventh Circuit in this case, 476 F.2d [1083] at 1086, as it had been in prior cases, and has generally been applied in similar circumstances by other Circuit Courts of Appeal, and various state courts.. This Court left open, in *Amos v. United States,* 255 U.S. 313, 317, 41 S.Ct. 266, 267, 65 L.Ed. 654 (1921), the question whether wife's permission to search the residence in which she lived with her husband could 'waive his constitutional rights,' but more recent authority here clearly indicates that the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared. . . . [W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effect sought to be inspected.[7] . . ." [Footnotes omitted, except

footnote 7, which reads, in pertinent part, as follows]

7. . . . The authority which justifies the third-party consent does not rest upon the law of property, . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

We believe that the above statement of the law accurately sets forth the rule to be followed in the instant case. We also agree with the statement in *Roberts v. United States,* 332 F.2d 892, 896 (8th Cir.), cert. denied, 380 U.S. 980, 85 S.Ct. 1344, 14 L.Ed.2d 274 (1964), that:

"It is not a question of agency, for a wife should not be held to have authority to waive her husband's constitutional rights. This is a question of the wife's own rights to authorize entry into premises where she lives and of which she had control."

See also, *United States v. Thompson,* 421 F.2d 373 (5th Cir. 1970); *United States v. Stone,* 471 F.2d 170 (7th Cir., 1972), and 79 C.J.S. Searches and Seizures §§ 56, 62d, pp. 815, 824.

■ We are aware of prior Oklahoma authority which would seemingly point to an opposite result. However, upon closer study, we find it readily apparent that such authority is distinguishable. For example, *Simmons v. State,* 94 Okl.Cr. 18, 229 P.2d 615 (1951), is often cited as standing for the proposition that a wife cannot waive her husband's right of immunity from an unlawful search and seizure. A closer look at *Simmons* and its predecessor *Carignano v. State,* 31 Okl.Cr. 228, 238 P. 507 (1925), reveals either that there was

---

I. We note that there was a sharp conflict in the testimony of the officers and Mrs. Burkham as to whether consent to search was actually given; however, such conflict presented a question of fact for the court and jury. In light of the findings, we must assume that

they found that such consent was actually given. We, of course, are bound by such determination, and must assume, for purposes of this opinion, that the State's version of the facts was correct.

present an element of implied coercion, or that the spouse, rather than affirmatively consenting to the search, merely failed to object when the officers announced their intentions or made their request to search. Either factual situation is distinguishable from the instant case, where the wife affirmatively consented to the search in the absence of any evidence that such consent was the product of coercion or fraud. *Rose v. State,* 36 Okl.Cr. 333, 254 P. 509 (1927) is similarly distinguishable, and *Maupin v. State,* 38 Okl.Cr. 241, 260 P. 92 (1927) was decided primarily on the basis of the invalidity of an affidavit to support a search warrant under the provisions of a particular statute. In a comparatively recent case, *Stucker v. State,* Okl.Cr., 493 P. 2d 84 (1972), we stated the general rule that, ordinarily, where two or more persons have equal rights to use or occupancy of premises, any one of them is capable of consenting to the search. In a footnote to that statement, we stated that an exception to such general rule was that a wife cannot consent for her husband. In support of such exception, we cited *Simmons, supra,* a case which we now believe distinguishable for the reasons above stated. This, in turn, would diminish the applicability of the exception stated in *Stucker, supra.* Suffice it to say, that most prior Oklahoma authority which would prevent a spouse's free and voluntary consent to be used to validate a warrantless search is, in our opinion, distinguishable; in any case, to the extent prior cases are contra to our present holding, they are hereby expressly overruled.

██ Put simply, the rule to be followed in Oklahoma is as follows: in the absence of fraud or express or implied coercion, an affirmative consent to search, given freely and voluntarily by one's spouse, may be used to justify a warrantless search and render its fruits admissible against the absent, nonconsenting spouse, except as to areas and property personal to the nonconsenting spouse and not under joint posses-

sion or control. See *State v. Johnson,* 85 N.M. 465, 513 P.2d 399 (1973).

██ Applying this rule to the instant case, we find that the consent given by the wife was sufficient to render the warrantless search constitutional, and that the trial court did not err in overruling defendant's Motion to Suppress the evidence produced by said search.

For the above and foregoing reasons, the judgment and sentence is accordingly, *affirmed.*

BLISS, J., concurs.