Donald **RUTLEDGE**, Appellant,

v.

**STATE of Oklahoma, Appellee.**

No. F–75–729.

Court of Criminal Appeals of Oklahoma.

Jan. 29, 1976.

Rehearing Denied Feb. 9, 1976.

G. Wendell Cathey, Durant, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Doug Combs, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

The Appellant, Donald Rutledge, hereinafter referred to as defendant, was charged, tried in a two stage proceeding and convicted in the District Court of Bryan County, Oklahoma, in Case No. CRF–75–33, for the offense of Grand Larceny After Former Conviction of a Felony, in violation of 21 O.S.1971, §§ 1701 and 1704. His punishment was assessed by a jury for a term of five (5) years imprisonment, and from a judgment and sentence pronounced in conformance with the verdict, defendant has perfected his timely appeal to this Court.

The State's evidence is substantially as follows:

Ms. Ila Goss, the complaining witness, testified that on March 27, 1975, she owned and operated a combination filling station-bookstore in Durant, Bryan County, Oklahoma, and had for several years; that during the early afternoon the defendant, whom Ms. Goss knew, and a young woman, later identified as Peggy Arnold, came into the store, stayed a short while and left. Later the defendant returned alone not long before the usual closing time, 5:00, and sat at a table in a small kitchen room adjoining the business area, saying that he was waiting for Peggy Arnold, who had gone to get a car and would need some gasoline. She did not appear and Ms. Goss told the defendant it was after closing time and she wanted to close for the day. Defendant then purchased thirty-five cents worth of gasoline, using a blue Purex bottle for a container, commenting that was the only money he had, and left.

In closing, Ms. Goss discovered that approximately One Hundred Five Dollars ($105.00) in currency was gone from a cigar box which she had kept on the top of an ice box near the table where the defendant had been sitting. She testified it had long been her custom to keep the proceeds from the sale of books in a cigar box, separate from other proceeds and not in the cash register and to let such daily receipts accumulate in the box until the end of the month. She handled the currency in the box daily, keeping the different denominations in separate rolls with rubber bands wrapped about them and that

one roll had around it a small red rubber band and another a small green rubber band. She immediately called the police station and related her trouble. In her testimony she identified certain currency (later admitted in evidence as having been taken from the person of the defendant at the time of his arrest and admitted as Exhibit No. 1) as a portion of that in the cigar box, one being a torn Five Dollar bill and two others marked with certain blue and red markings.

Mark Smith, fifteen years of age, next testified that he was a part-time employee of Ms. Goss and was on duty the afternoon of the 27th. He was present when the defendant and Peggy Arnold came earlier and left, also when the defendant returned later by himself. That he and the defendant sat at the table near the ice box not long before closing time and defendant asked him to go outside the building and get a jug to be used as a container for gasoline. The witness complied, leaving the defendant alone while he was outside and Ms. Goss was in the store proper. He returned with a jug but defendant complained it had something in it and requested that the witness get another, which he did, a blue colored Purex jug later used for the gasoline. Again, defendant was left alone in the kitchen room. Mark Smith further testified, as did Ms. Goss, about putting the proceeds from the sale of books in a cigar box and he too identified certain currency as having been in the box before it was taken. He also testified that he did not see any one take the currency from the cigar box and knew nothing about its disappearance. Kenneth Ervin, a police officer, testified that Ms. Goss called and reported the theft of the money, One Hundred Five ($105.00) to One Hundred Ten ($110.00) Dollars, and that he responded to her call between six o'clock and seven o'clock. After talking with Ms. Goss, he called Detective Box Hendrix and turned the investigation to him.

Ms. Peggy Arnold testified for the State and the pertinent part of her testimony is that she was with the defendant on March 27, 1975, and that they, the two of them, were checked into room three (3) at the Plaza Motel in Durant for two days, the 27th and the 28th. That she and the defendant had gone to Ms. Goss' filling station-bookstore on the 27th and had been together all day except later in the afternoon he left her to go make a phone call. She did not know where he went but when he failed to return, she went for a Coke at "Sherrer's" across the street from Goss' and when she came out, she saw the defendant walking across the street from Goss' carrying a blue jug with gasoline in it. They returned to the motel and defendant placed the blue jug outside their motel room door, room three.

She further testified that she and the defendant then walked to TG&Y where they purchased various items of clothing, including pants and shirts, totaling Forty ($40.00) to Fifty ($50.00) Dollars, for which the defendant paid in cash using currency in denominations of ones, fives and tens. She identified State's Exhibit No. 5 as TG&Y tags from the clothes which they had purchased and left on the bed and floor in their motel room. She also identified State's Exhibit No. 6, two rubber bands, one a small red band and the other a small green band, as having come from the motel room.

From the trial transcript, it appears Ms. Arnold and defendant were picked up about 7:30 to 8:00 the evening of the 27th and taken to the police station for interrogation.

She further testified in chief that she saw Detective Hendrix at the police station about 9:00 or 9:30 and following the interrogation he took her to the motel room at her request to get her clothes and while there he entered the room and found the TG&Y tags from the clothing. She spent the night of the 27th at her sister's in Durant.

On cross-examination Ms. Arnold stated she had been promised by police officers that if she would testify against the defendant she would not be charged with a crime and for that reason she was testifying. She told of purchases at TG&Y on the 27th but said they were made about 5:00 or 5:30 the afternoon of the 27th; that she and the defendant had also made purchases at the same store on the 25th and on that occasion he had a wallet full of five and ten dollar bills.

The State next called Ms. Kathy Williamson, sixteen years of age, who operated a TG&Y check-out stand the evening of the 27th of March. She identified both the defendant and Peggy Arnold, whom she knew as Peggy Hoaglan, and said both were in the store about 7:00 to 7:30 on the 27th and made various purchases of clothing, one item "a blue jacket, like the one he is wearing." She testified the defendant paid for the purchases with "twenty-eight (28) ones, two (2) fives (5) and forty-seven cents to be exact." She also identified State's Exhibit No. 5, the TG&Y tags.

On cross-examination she testified she was not contacted and interviewed by police officers until the next day, the 28th. The State's last witness was Detective Box Hendrix of the Durant police department. He received his assignment to the Goss case about 7:00–7:30 the 27th, talked with her in person and issued a pick-up order over the radio for the defendant. About 8:45 defendant and Peggy Arnold were brought to the police station and shortly afterwards he arrested and "booked in" the defendant, searched him and found on his person State's Exhibit No. 1, currency in the following denominations, six ones, seven fives and one ten and eighty-five cents, including the bills identified by witnesses Ms. Goss and Mark Smith.

Detective Hendrix testified he, "Peggy Arnold, Officer Garner and Peggy's brother-in-law drove down to the Plaza Motel to Room 3 . . . Peggy wanted to get her clothes. She had some stuff down there and she wanted to pick them up." He entered the motel room, room three, with the others without any objection but with the express consent of Peggy Arnold and found those items, TG&Y tags, identified as State's Exhibit No. 5 scattered about the room. He also identified State's Exhibit No. 4, a blue Purex jug filled with gasoline, as having been found by him just outside the motel room on that same occasion. State's Exhibit No. 6, the rubber bands, were found by him in the room at "6:00 on the 28th of March, 1975."

On cross-examination he admitted that he promised Peggy Arnold he would not prosecute her if she would testify against the defendant.

The State rested and the defendant rested.

Defendant's first assignment of error is that the·trial court committed prejudicial error in failing to sustain defendant's Motion to Suppress State's Exhibits Nos. 5 and 6, testified by Detective Hendrix as having been found and seized in room three of the motel for which the officer had no search warrant, Exhibit No. 5 being tags allegedly removed from clothing purchased at TG&Y and Exhibit No. 6 being rubber bands allegedly used by Ms. Goss in separating denominations of currency allegedly stolen from her. Exhibit No. ·5 led to the discovery of State's witness Kathy Williamson ·and her convincing testimony.

■ Detective Hendrix had no search warrant for the motel room, nor did he have or contend that he had consent from the defendant to search the room. A warrantless search is per se unreasonable under the Fourth Amendment and casts upon the State the burden of establishing that the search falls within one of the specific and well-delineated exceptions to the rule. In this case, has the State met its burden? We are of the opinion that it has.

■ The uncontradicted evidence in the record before us is that both defendant and Peggy Arnold were checked in as joint occupants of room three in the Plaza Motel, one with as much authority and dominion over the room as the other. As shown above by her testimony and that of Detective Hendrix, she requested the detective to go to the room with her and he and the others did. She requested and gave her consent that he enter the room. There is not the slightest evidence to the contrary. He was authorized to enter the room and having done so to seize any evidence competent and material to establish the guilt of the accused. Peggy Arnold's consent was freely and voluntarily given.

In the recent case of *Burkham v. State,* Okl.Cr., 538 P.2d 1121 (1975) this Court quoted from and adopted a portion of *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) as follows:

"It has been assumed by the parties and the courts below that the voluntary consent of any joint occupant of a residence to search the premises jointly occupied is valid against the co-occupant, permitting evidence discovered in the search to be used against him at a criminal trial."

And further adopted footnote 7 of the case:

"7 . . . The authority which justifies the third-party consent does not rest upon the law of property, . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."

We established the following rule in *Burkham,* supra:

"Put simply, the rule to be followed in Oklahoma is as follows: in the absence of fraud or express or implied coercion, an affirmative consent to search, given freely and voluntarily by one's spouse, may be used to justify a warrantless search and render its fruits admissible against the absent, nonconsenting spouse, except as to areas and property personal to the nonconsenting spouse and not under joint possession or control."

■ We see no reason why the rule should not be extended to embrace consent given by a paramour where the evidence shows the area searched was common to both the defendant and his paramour. The United States Court of Appeals for the Seventh Circuit in *United States v. Robinson,* 479 F.2d 300 (7th Cir., 1973), wherein that Court relied on the United States Court of Appeals for the Tenth Circuit opinion in *White v. United States,* 444 F.2d 724 (10th Cir., 1971), stated:

" . . . [W]here a paramour gave permission to officers to search a motel unit occupied jointly by her and the defendant, leading to the search of a small, cloth zipper bag owned by the defendant. The court concluded that the paramour's consent to the motel search extended to the defendant's bag."

In the *White* decision, the defendant, White, and his paramour jointly occupied a motel room. The lower federal district court held the paramour did have authority generally to consent to a search of the room, and such a reasoning was adopted by the Circuit Court.

We, therefore, hold the search made by Detective Hendrix was valid by reason of the express consent of Peggy Arnold and the items seized during the search were competent evidence in the trial of the defendant and should not have been suppressed. Defendant's first assignment of error is without merit.

■ Defendant's second assignment of error is that the State's evidence was insufficient to warrant his conviction. The

evidence in the case was more than ample to justify the jury's verdict, and this Court has no reason to disturb it. *Lane v. State,* Okl.Cr., 357 P.2d 445 (1960).

 In his third and final assignment of error, defendant contends the punishment assessed, five (5) years, was excessive and resulted, in part, from improper statements made by the District Attorney in his argument to the jury.

In the second stage of the trial it was stipulated by and between the State and the defendant in the presence of the jury that the defendant had four (4) former convictions of felonies, two (2) for Forgery in the Second Degree and two (2) for Grand Larceny After Former Conviction of a Felony, thereby subjecting the defendant to punishment by imprisonment for a term not to exceed ten (10) years.

As to the assertion of improper argument by the District Attorney, defendant complains under the excessive punishment error that the District Attorney made these references in his argument, "See those clothes he is wearing over there? Those are Mrs. Goss's clothes. She paid for them." And, "Here she is trying to make an honest living and you have people like leeches." We find from a careful review of the arguments as shown in the record that the complained of portions, when considered with the total argument, come within a reasonable construction of the evidence in the case and reasonably warranted by the evidence. See *Battle v. State,* Okl.Cr., 478 P.2d 1005 (1970).

Accordingly, we find the punishment assessed was well within the range provided by law and it does not shock the conscience of this Court. See *Turner v. State,* Okl. Cr., 479 P.2d 631 (1971).

The judgment and sentence is accordingly, affirmed.

BRETT, P. J., and BUSSEY, J., concur.