**Mose NELSON, Jr., Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–725.**

Court of Criminal Appeals of Oklahoma.

May 11, 1977.

Rehearing Denied May 26, 1977.

Roger Hilfiger, Muskogee, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Janet Cox, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

Appellant, Mose Nelson, Jr., hereinafter referred to as defendant, was charged, tried before a jury in a two-stage proceeding and convicted in the District Court, Muskogee County, Case No. CRF–75–747, for the offense of Knowingly Concealing Stolen Property, After Former Conviction of a Felony. His punishment was fixed at ten (10) years in the State penitentiary, and from said judgment and sentence a timely appeal has been perfected to this Court.

The State's first witness was Mr. Harold L. McElmurry who testified that during the

latter part of October, 1975, he was driving his father's car to work, ran out of gas, and left the car at approximately 17th and Shawnee Streets in Muskogee, Oklahoma. Upon returning to the car some eight hours later, he found that the car had been stripped and the trunk pried open, and among items missing was a tool box containing approximately $500.00 worth of tools. The witness then identified State's Exhibit No. 1 as a pair of Wiss metal cutters with his name engraved upon them and which had been contained in the tool box taken from the trunk of his father's vehicle.

The State's next witness was Officer Wadie Morton, a detective with the Muskogee Police Department, who testified that on December 16, 1975, he and five other officers proceeded to the residence located at 1901 Pickens, in Muskogee, Oklahoma, for the purpose of arresting the defendant and making a search of the residence for a particular item. Upon arriving at that location at approximately 11:30 a. m., the officers found the defendant in the residence, placed him under arrest, searched the residence, and then transported defendant to the city jail. Officer Morton further testified that he and other officers returned to the premises at approximately 4:30 that afternoon, and with permission of defendant's stepfather, Mr. Walter Stanford, who owned the premises, continued the search started that morning. The defendant was not present at the time this consent was given, but was already in jail. The witness then identified State's Exhibit No. 2 as a Waiver of Demand for Search Warrant signed by Walter Stanford, which allowed the officers to conduct a complete search of, "my person, my residence or my vehicles located at 1901 Pickens Street, Muskogee, Oklahoma, and/or out buildings or other living space on my property." Pursuant to the consent to search, a search was made of the out building where defendant slept, located approximately ten yards behind the main residence.

At this point, upon defense counsel's objection to Officer Morton's further testimony, the court conducted a hearing outside the presence of the jury considering defendant's motion to suppress evidence discovered as a result of the second search. At this hearing the defendant testified that he resided with his mother and stepfather at 1901 Pickens in Muskogee, Oklahoma. Defendant described the premises as consisting of a main residence and a smaller house, located approximately 25 feet behind the main residence. The small house was a one room structure containing a refrigerator, cook stove, heater, couch, bed, china cabinet, television, and a telephone. The defendant testified that approximately two weeks prior to his arrest he began staying in the small house rather than the main residence because there was no available sleeping area in the main residence as the result of his mother, a baby sitter for Welfare, keeping small children overnight. Defendant related that he was the only person staying in this house, that he paid no rent but would on occasion give his mother money, that he was 27-years-old and not being supported by his parents, that the house and all its contents belonged to his stepfather, that he often prepared meals in this house but generally ate his evening meal in the main residence with his parents, and that he bathed and kept all his clothing in the main residence. Defendant testified that his mother and stepfather occasionally entered the small house, but indicated that they would first knock, yell, or call defendant by name before entering because defendant always kept the door locked. Defendant testified that on December 16, 1975, he was arrested at the front door of the main residence and placed in a police car while officers conducted a search, that he was not shown a search warrant, and that at no time did he consent to a search of the small house.

Upon conclusion of defendant's testimony and arguments of counsel, the court concluded that the search made of the small house was proper and thereafter overruled defendant's Motion to Suppress any evidence obtained therefrom.

Thereafter, the State continued its direct examination of Officer Wadie Morton in

the presence of the jury. Officer Morton testified that pursuant to Mr. Stanford's consent, the small house behind the main residence was searched which resulted in the discovery of State's Exhibit No. 1, a pair of Wiss metal cutters with the name of Harold McElmurry engraved on them.

The State called as its next witness Mr. Bill Stinebuck, an investigator for the Muskogee District Attorney's Office, who testified that he accompanied Officer Morton on the second search, and that it was he who discovered the wire cutters hidden on top of a hutch in the small house. Stinebuck testified that he was searching for a specific item, but while conducting the search he found the metal cutters and noticed that the engraved name on them was not that of the defendant. Stinebuck then handed the cutters to Officer Morton who recognized the tool as fitting the description of recently stolen property.

Upon conclusion of Mr. Stinebuck's testimony, the State rested. The defense demurred to the evidence and then rested.

After closing argument, the jury returned a verdict of guilty as to the first stage of the proceeding. The State then presented evidence of the defendant's three former felony convictions. The State and defendant then rested, and the jury assessed punishment as set out above.

The defendant's first assignment of error is that the trial court committed prejudicial error in failing to sustain defendant's Motion to Suppress. Defendant contends that because the search was made without a warrant and was neither incident to an arrest nor preceded by a valid consent, the State failed to meet its burden of proving the warrantless search reasonable.

■ The defendant correctly asserts that a warrantless search is per se unreasonable under the Fourth Amendment and casts upon the State the burden of establishing that the search falls within a recognized exception to the rule. *Rutledge v. State*, Okl.Cr., 545 P.2d 1257 (1976). Familiar exceptions to that rule are that a warrantless search is not unreasonable where

incident to a valid arrest, or where preceded by a free and voluntary consent. We agree that a warrantless search conducted five hours after an arrest does not fall within the search incident to a valid arrest exception. We do not agree, however, that the State has failed to prove valid consent, since free and voluntary consent was given by defendant's stepfather.

The question before us narrows to whether the stepfather's voluntary consent to search the small house behind his residence can operate as a constitutional basis for a search as against the nonpresent, nonconsenting stepson. We believe the question can be answered in the affirmative in accord with the rule set forth by the United States Supreme Court in *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), and adopted by this Court in *Burkham v. State*, Okl.Cr., 538 P.2d 1121 (1975), as follows:

" '[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effect sought to be inspected. . . .' " (Footnotes omitted)

*Burkham v. State*, supra, further adopted footnote seven of *United States v. Matlock*, which reads:

"7. . . . The authority which justifies the third-party consent does not rest upon the law of property, . . . but rests rather on the mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." (Citations omitted)

See also, *Rutledge v. State*, supra.

■ In applying the above rule we find that the stepfather had sufficient relation-

ship to the premises to give valid consent for a warrantless search. The facts show that the small house was used no differently from an extra bedroom to the stepfather's residence. Defendant slept in the small house but paid no rent and owned none of the building's contents. He ate his evening meals, kept his clothing and also bathed in the large house. Even the very circumstances of defendant's changing his sleeping place to the small house suggest he merely "changed rooms" for the convenience of his mother's baby sitting business. Defendant's testimony that he kept the door locked while inside the small house can be likened to one locking a bathroom door—privacy for a limited purpose. In sum, defendant had no more control or exclusive right over the small house than he did over a bedroom in the large house when he stayed there. In this Court's opinion the stepfather still had access and control for most purposes over the small house at the time he consented to its warrantless search. Therefore, the consent search was valid and the trial court did not err in overruling defendant's Motion to Suppress the evidence produced by such search.

Defendant's second assignment of error asserts that the punishment is excessive in light of the property concealed. This Court will not modify a sentence unless we can say under all facts and circumstances the sentence is so excessive as to shock the conscience of this Court. We need only say that the sentence was within the range provided by law and does not shock the conscience of this Court. See, *Roberts v. State,* Okl.Cr., 473 P.2d 264 (1970).

The judgment and sentence is, accordingly, *AFFIRMED.*

BUSSEY, P. J., concurs.

BRETT, Judge, dissenting.

I dissent to this decision because the facts contained in *United States v. Matlock,* supra, and *Burkham v. State,* supra, are clearly distinguishable from the facts in the instant case. I believe the majority deci-

sion extends the provisions for the consent search too far; and, therefore, I believe the warrantless search of defendant's quarters was illegal and his Motion to Suppress should have been sustained.