**James Robert FIELDS, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–88–250.**

Court of Criminal Appeals of Oklahoma.

March 19, 1991.

Lee Ann Jones Peters, Chief of Appellate Div., Oklahoma County Public Defender's Office, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen., Wellon B. Poe, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LANE, Presiding Judge:

Appellant was convicted of two counts of Concealing Stolen Property After Former Conviction of Two or More Felonies (21 O.S.1981, § 1713) in District Court of Oklahoma County, Case No. CRF–87–2660. In accordance with the jury's verdict, Appellant was sentenced to serve terms of twenty (20) years incarceration for each count. Appellant has brought the present appeal urging, *inter alia*, that his conviction was improperly based on illegally seized evi-

dence. Because we agree with this contention, we need not address Appellant's other allegation of error.

Appellant and his mother, Mary Wright, were co-owners of the house where Appellant and one of his friends were living. At the time of Appellant's arrest, Mrs. Wright was living with friends. Appellant lived in the house apparently rent free, but was supposed to be doing repair work. Mrs. Wright did not have a key to the house and had left only a stove and possibly some sheets and towels in the house when she moved out sometime previously.

On the day of Appellant's arrest, his mother went to the house claiming that the neighbors had told her that Appellant was not paying the bills. She allowed one of the neighbors, Roger Lee Daub to go into the house. Daub suspected that Appellant had burglarized his home and wanted to see if any of his belongings were in the house. When he found a drill and some other missing items, Daub went back to his house and called the police.

When the police arrived at the house, Mrs. Wright kicked open the back door to let the police in. She gave them both oral and written consent to search the interior of the house. Once inside, officers recovered a number of items which were identified as stolen property.

At issue here is the legitimacy of a search based on the consent of a non-occupant property owner. There is no question that if the consent to the search is valid, then the case may be exempted from the general rule which prohibits warrantless searches. *Newsom v. State*, 763 P.2d 135, 140 (Okl.Cr.1988). If Appellant's mother did not have the ability to consent, then we must agree with Appellant and find that the evidence seized in the house should have been suppressed.

The right against unreasonable searches and seizures is enumerated in both the Fourth Amendment to the United States Constitution and Article 2, § 30 of the Oklahoma Constitution. In identical language, these two constitutional clauses provide that people have a right to be protected against unreasonable searches and

seizures in their homes. It is well recognized that a search may be conducted when there has been a warrant obtained or when permission has been granted by the proper person. *Chapman v. United States,* 365 U.S. 610, 612, 81 S.Ct. 776, 779, 5 L.Ed.2d 828 (1961).

Establishment of the proper person to consent to a search is an ongoing process with each case determined on its own facts. Generally, the Supreme Court has held:

... [W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other significant relationship to the premises or effects sought to by inspected.

*United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). In a footnote to this rule, the Court specified:

Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property with its attendant historical and legal refinements ... but rests rather on mutual use of the property by persons generally having joint access or control for most purposes so that it is reasonable to recognize that any co-inhabitant has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the area to be searched.

*Id.*

This rule has been adopted in Oklahoma in a variety of situations. Searches have been justified on the basis of the third-party consent of a spouse, *Burkham v. State,* 538 P.2d 1121 (Okl.Cr.1975), a common law wife; *Sullivan v. State,* 716 P.2d 684 (Okl. Cr.1986), a girlfriend; *Johnson v. State,* 731 P.2d 993 (Okl.Cr.1987), a relative; *Adams v. State,* 645 P.2d 1028 (Okl.Cr. 1982), and by roommates; *Larson v. State,* 700 P.2d 220 (Okl.Cr.1985). All of these

cases, however, contain a common element which this case lacks; in each case the consenting party had joint access and control of the place sought to be searched. In all of the cases, the person from whom consent was obtained lived in the premises which were searched.

In the present case, the evidence is uncontradicted that other than legal joint ownership of the house, Mrs. Wright had no other connection with the property at the time the search was undertaken. She did not pay the bills, did not possess a key and did not keep any of her property in the house other than the stove. She was not invited to the house at the time she kicked the door in to allow the police entry and had no justification for her actions other than retaliation toward her son.

The trial court, in refusing to suppress the evidence, based its decision on the fact that Mrs. Wright was not charging Appellant any rent to stay in the house notwithstanding his joint ownership in the property. The court recognized that if Mrs. Wright could be characterized as a landlord and Appellant as a tenant, then the search would have to be suppressed. Where the court erred, however, was deciding that there had to be an exchange of rent for this relationship to occur.

The Supreme Court made it clear in *Matlock,* 415 U.S. at 171, 94 S.Ct. at 993, 39 L.Ed.2d at 242, that access and control are the dispositive issues in search and seizure cases. In *Matlock,* the Court affirmed its holding in *Chapman,* 365 U.S. at 610, 81 S.Ct. at 776, that just because a landlord may hold a recognized legal interest in the property to be searched, unless he has also reserved access and control over the property, his right to enter the property, even to preserve the property from waste or distruction, is secondary to a tenant's right against unreasonable searches and seizures. *Matlock,* 415 U.S. at 171, 94 S.Ct. at 993, 39 L.Ed.2d at 242. The Court made it clear that access and control are the dispositive issues in search and seizure cases. Whether or not Appellant paid rent in return for the right to occupy the house is irrelevant to a determination of who may

consent to search. As the Supreme Court noted in *Stoner v. California,* 376 U.S. 483, 488, 84 S.Ct. 889, 892, 11 L.Ed.2d 856 (1964):

> [I]t is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions, developed and refined by the common law of private property law which, more than almost any other branch of law, has been shaped by distinctions whose validity is largely historical.... [W]e ought not to bow to them in the fair administration of criminal law. To do so would not comport with our justly proud claim of procedural protections accorded to those charged with crime. .

To go against the established body of law discussed above and hold that the relationship between Mrs. Wright and the property is somehow different from that of landlord merely because ño rent was exchanged between her and her son would be to engage in distinctions of the subtle nature decried by the Court. Although Wright was a co-owner of the property, she did not live there and did not have the authority to authorize the search. At most, her relationship would be most similar to that of landlord over her interest in the property.

As the Court held recently in *Illinois v. Rodriguez,* 497 U.S. ——, ——, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148, 158 (1990):

> "Common authority" rests on "mutual use of the property by persons generally having joint access or control for most purposes...." The burden of establishing that common authority rests upon the State. On the basis of this record, it is clear that burden was not sustained.

Accordingly, Appellant's convictions are REVERSED and the case is remanded to the district court with instructions to DISMISS.

BRETT, PARKS and JOHNSON, JJ., concur.

LUMPKIN, V.P.J., concurred in the result.