**Shaun Paul JOHNSON, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–93–985.**

Court of Criminal Appeals of Oklahoma.

Aug. 15, 1995.

Timothy R. Beebe and Randy D. Brady, Enid, for Appellant at trial.

Mary S. Bruehl, Assistant Appellate Indigent Defender, Norman, for Appellant on appeal.

James Emig, First Assistant District Attorney, Newkirk, for Appellee at trial.

Susan B. Loving, Attorney General of Oklahoma and Sandra D. Howard, Assistant Attorney General, Oklahoma City, for Appellee on appeal.

## OPINION

CHAPEL, Vice Presiding Judge:

Shaun Paul Johnson was tried by a jury and convicted of Trafficking in Illegal Drugs After Former Conviction of a Felony in violation of 63 O.S.1991, § 2–415, in the District Court of Kay County, Case No. CRF–92–173. In accordance with the jury's recommendation, the Honorable Neal Beekman sentenced Johnson to life imprisonment and fined him $500,000, $450,000 suspended. Johnson has perfected his appeal of this conviction.

Johnson raises six propositions of error in support of his appeal. As Propositions II and V require reversal, we do not reach the remaining claims of error.

In Proposition II Johnson claims that his co-defendant Cabrera's consent to search Johnson's car was invalid. It is settled that a third party who possesses common authority over property, including joint access or control, may give valid consent to search as against an "absent, nonconsenting person with whom that authority is shared." [1] The driver of a car generally has immediate possession and control of the vehicle and so has common authority, both apparent and actual, to consent to a search. The issue presented here is whether the driver has actual as well as apparent authority where a known owner is present as a passenger in a vehicle. Is third-party consent valid where a person whom the inquiring officer knows to be the owner, with a superior property interest, is present? *Matlock* specifically referred to an absent nonconsenting person. Oklahoma case law refers only to valid third party consent given in the *absence* of the person with a superior property interest.[2] Other

---

1. *United States v. Matlock,* 415 U.S. 164, 170, 94 S.Ct. 988, 993, 39 L.Ed.2d 242, 249 (1974); *Reeves v. State,* 818 P.2d 495, 503 (Okl.Cr.1991);

*Burkham v. State,* 538 P.2d 1121, 1124 (Okl.Cr. 1975).

2. *Reeves v. State,* 818 P.2d 495 (Okl.Cr.1991) (ex-wife had key to vehicle and authority to move it);

jurisdictions, all citing *Matlock*, have split on the issue where a person with a superior property interest is present. We determine that decisions which require officers to seek consent from the present owner as well as the driver comply with both *Matlock* and existing search and seizure law. Put simply, a person whose property is the object of a search should have controlling authority to refuse consent to the search.[3] Where the known owner is present, the driver has only apparent, not actual, authority, and his consent is invalid as a matter of law.

■ Consent to search must be voluntary considering the totality of the circumstances.[4] This Court has held that consent cannot be implied from silence in the face of a request to search or a person's failure to expressly object to a search.[5] In *State v. Leach*[6] the Supreme Court of Washington, en banc, considered this issue in the context of premises rather than cars and concluded that, even with the apparently valid consent of a third party with common authority, police must obtain the consent of any coinhabitant possessing equal control where that person was present and able to object to a warrantless search.[7] The court reasoned that *Matlock* referred only to absent, nonconsenting persons and concluded that it was unreasonable to presume that a coinhabitant assumed the risk of a third party consenting to entrance in his presence. *Leach* considered a Ninth Circuit case, *United States v. Impink*,[8] in which a defendant actively objected to a search purportedly authorized by the implied consent of a third party, and extended the analysis to persons possessing an equal privacy interest and able to object, without requiring that a defendant actually object to the search authorized (a requirement also not imposed by Oklahoma law). *Leach* seemed especially influenced by the fact that officers knew the defendant had an equal or superior possessory interest in the property. *Leach* concluded that "[a]ny other rule exhalts [sic] expediency over an individual's Fourth Amendment guarantees. Accordingly, we refuse to beat a path to the door of exceptions."[9]

The United States District Court, D. Delaware, held in *United States v. Padron*[10] that a driver could not authorize a search where one investigating officer knew the driver was

---

*Dyer v. State*, 815 P.2d 689 (Okl.Cr.1991) (father/owner gave consent to search cellar in jointly occupied house); *Fields v. State*, 808 P.2d 79 (Okl.Cr.1991) (owner/mother's consent invalid where no possessory interest in leased property); *Newsom v. State*, 763 P.2d 135 (Okl.Cr.1988) (roommate paid rent and had property in room searched); *Johnson v. State*, 731 P.2d 993 (Okl.Cr.1987), *cert. denied*, 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987) (live-in lessee girlfriend in jointly occupied apartment); *Sullivan v. State*, 716 P.2d 684 (Okl.Cr.1986) (common-law wife authorized even though moving when still had key and possessions in jointly occupied house); *Larson v. State*, 700 P.2d 220 (Okl.Cr.1985) (roommate, jointly occupied rooms); *Smith v. State*, 604 P.2d 139 (Okl.Cr.1979) (co-renter of motel room, jointly occupied); *Riggle v. State*, 585 P.2d 1382 (Okl.Cr.1978) (roommate consent to jointly occupied areas); *Nelson v. State*, 564 P.2d 254 (Okl.Cr.1977) (owner/stepfather consent to separate shed on jointly occupied property); *Rutledge v. State*, 545 P.2d 1257 (Okl.Cr.1976) ("paramour" motel co-tenant); *Burkham v. State*, 538 P.2d 1121 (Okl.Cr.1975) (wife). *Cf. Lee v. State*, 661 P.2d 1345 (Okl.Cr.1983) (present owner consented, defendant there as guest); *Feaster v. State*, 635 P.2d 617 (Okl.Cr.1981) (coinhabitant consented to police entry for warrantless arrest, no search).

3. *State v. Leach*, 113 Wash.2d 735, 782 P.2d 1035, 1038 (1989).

4. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

5. *State v. Kudron*, 816 P.2d 567, 571 (Okl.Cr. 1991); *see also U.S. v. Medlin*, 842 F.2d 1194 (10th Cir.1988).

6. 782 P.2d at 1040.

7. *Id.*

8. 728 F.2d 1228 (9th Cir.1984). The Ninth Circuit wrote:
   "We do not hold that police must invariably seek consent from the suspect before relying on a third party's consent. However, when the police intentionally bypass a suspect who is present and known by them to possess a superior privacy interest, the validity of a third party consent is less certain.... Where a suspect is present and objecting to a search, implied consent by a third party with an inferior privacy interest is ineffective." 728 F.2d at 1234.

9. 782 P.2d at 1040.

10. 657 F.Supp. 840 (D.Del.1987).

not the owner of the car and the other investigating officer knew the passenger did own the car. The court wrote:

> In considering instances where a person waives a constitutional right, and especially where the waiver is effected by a third party, the Court must scrutinize the government's actions closely.... [A]t least one officer knew a suspect with a superior privacy interest was present, which makes the validity of the consent even less certain. The officers' failure to inquire into Padron's authority or seek Rubio's consent was unreasonable. To hold otherwise would condone, even encourage the police to avoid inquiries into factual circumstances ... [citations omitted].[11]

■ We are persuaded by this reasoning. Co-defendant Cabrera was driving Johnson's car and would have had actual authority to consent to a search had Johnson been elsewhere, but Johnson was present. McBride talked to Johnson and knew he owned the car, but asked Cabrera for consent to search outside Johnson's presence and never asked for or received Johnson's consent. From the record before us, this Court cannot even be certain that Johnson knew the search was pursuant to Cabrera's consent rather than on McBride's initiative.[12] McBride agreed he knew Johnson owned the car but explained he thought he should get consent to search from Cabrera (who was Hispanic and spoke heavily accented English). In neither trial did he explain why he did not also ask for Johnson's consent. The fact that McBride was aware who owned the car is crucial to our holding.[13] Where a person with equal or superior property interest is present and able to object to a search, and the officer knows of the property interest, that person should be asked for consent to search. The driver's apparent common

authority to consent to search does not amount to actual authority to consent, and the driver's consent must be invalid as a matter of law, where a known owner is present and able to object to the search. McBride should have obtained Johnson's consent to search. Cabrera's consent to search the vehicle was invalid, and Johnson's conviction must be reversed.

■ Johnson claims in Proposition V that he was prejudiced when the State continued to ask leading questions after his co-defendant Cabrera invoked his Fifth Amendment right to silence in front of the jury. Johnson was tried after Cabrera was convicted and sentenced. Cabrera was held in the Kay County jail and was available as a witness in Johnson's trial. The State rested its case without calling Cabrera. The trial court denied Johnson's demurrer to the evidence. The next morning before Johnson presented anything the State asked to reopen its case in order to present Cabrera's testimony, explaining that they had erred in failing to call Cabrera. The prosecutor said Cabrera's testimony would allow the State to present its best case "if the Court has any doubts about the posture of the State's case the way we left it yesterday." The record shows that the State wanted to call Cabrera to bolster the proof that Johnson had possession and control over the cocaine.

The record also clearly shows that the State knew Cabrera would exercise his Fifth Amendment right not to incriminate himself by refusing to answer questions. The State argued that, since Cabrera had been convicted, he had no Fifth Amendment right to exercise, and that the trial court should not appoint Cabrera an attorney for these proceedings. The State also offered Cabrera use immunity for any testimony. Before Ca-

11. 657 F.Supp. at 847–848.

12. *See United States v. Morales,* 861 F.2d 396, 405 (8th Cir.1988) (dissenting opinion).

13. Four jurisdictions have concluded that a third party with common authority over a vehicle can validly consent in the presence of a defendant with a superior property interest. *United States v. Morales,* 861 F.2d 396, 399 (3rd Cir.1988); *United States v. Varona–Algos,* 819 F.2d 81, 83

(5th Cir.1987); *United States v. Dunkley,* 911 F.2d 522, 526 (11th Cir.1990); *United States v. Eldridge,* 984 F.2d 943, 948 (8th Cir.1993). These cases justify the search by the defendant's "implied consent" through inaction or failure to object. Even if Oklahoma law permitted implied consent to be used to justify third-party consent, the cases are distinguishable because those courts were not presented with an officer who knew the registered owner was present and able to object to a search.

brera was called as a witness and sworn, the trial court appointed him an attorney and ruled he could invoke his Fifth Amendment privilege. If the prosecutor intended to call Cabrera in good faith believing he would be forced to answer all questions, this belief was scotched before Cabrera ever saw the witness stand. Once the trial court ruled that Cabrera could invoke the privilege, the State could no longer rely on its contention that Cabrera could not rely on the Fifth Amendment.

Over objection of Cabrera's counsel and Johnson, who asked that initial questioning take place *in camera* to avoid prejudice to Johnson, Cabrera and his interpreter were sworn in open court. The State asked five preliminary non-incriminating questions, then asked whether Cabrera talked to the police after his arrest. The trial court ruled that was an incriminating question and Cabrera refused to answer; after lengthy discussion the trial court ruled the State could not offer Cabrera use immunity. The State then asked whether Cabrera recalled telling officers that he had introduced Johnson to a Cuban to buy cocaine. For the first time, the jury was excused for the lengthy discussion of Johnson's objection that the State's questioning was solely an attempt to prejudice him. The jury returned, the trial court overruled Johnson's objection, the State repeated the question, the court ruled it was incriminating, and Cabrera took the Fifth. The State then asked whether Cabrera recalled telling police that Johnson had returned from Des Moines where he had looked for cocaine but could not find any, the court ruled it was incriminating, and Cabrera took the Fifth, and the State then stopped questioning. On cross-examination, Johnson asked Cabrera if all the cocaine found in the car was his and Cabrera took the Fifth.

The prosecutor thus did not immediately cease direct examination after the trial court ruled Cabrera did not have to answer questions the State expected he would answer.

The trial court ruled that whether Cabrera had talked to police would be self-incriminating along with the questions that might follow, such as what was said to police. The trial court then immediately ruled the State could not offer Cabrera immunity. These two rulings should have put the State on notice that questions regarding Cabrera's statement to the police were off limits. However, the next two questions—one of which was repeated—specifically referred to portions of Cabrera's statements to officers indicating Johnson was aware of and participated in the cocaine buy. These were detailed leading questions. The record does not reflect that, at the point they were asked, the State in good faith believed Cabrera would be required to answer either of these questions. To the contrary, the explicitly leading nature of the questions, combined with Cabrera's refusal to answer, left an unmistakable inference that Johnson knew of and was involved in the illegal transaction at issue. They could not conceivably have any other purpose.

■ The most troubling feature of this episode is that essentially all of it occurred before the jury. This Court has held that a witness claiming his Fifth Amendment privilege in front of a jury is reversible error where trial counsel objects and the State makes a conscious and flagrant attempt to build its case from inferences arising from the witness's invoking the Fifth, or that the witness's refusal to answer questions added critical weight to the State's case in a form not subject to cross-examination.[14] Jury proceedings should be conducted as much as possible to facilitate making claims of privilege without the jury's knowledge.[15] The State should not call a witness who will claim a valid privilege for the purpose of impressing the claim of privilege on the jury.[16] Well before Cabrera was sworn the State knew the trial court would permit Cabrera to exercise the privilege, and the State was apprised of the extremely narrow scope of permissible

---

**14.** *Battenfield v. State*, 816 P.2d 555 (Okl.Cr. 1991), *cert. denied*, 503 U.S. 943, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992) *adopting Namet v. United States*, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963).

**15.** 12 O.S.1991, § 2513(B).

**16.** 816 P.2d at 560; ABA Standards for Criminal Justice, The Prosecution Function § 3–5.7(c) (1980).

questioning well before it asked the final improper questions. Johnson and Cabrera's counsel both unsuccessfully requested Cabrera be initially questioned *in camera* to determine the scope of appropriate inquiry, and Cabrera took the Fifth in front of the jury six times during the State's direct examination and once during Johnson's cross-examination.

The entire record supports the conclusion that the State made a conscious and flagrant attempt to build its case for possession from inferences arising from Cabrera's use of the Fifth Amendment. The State knew before Cabrera was called that he would be permitted to take the Fifth, that Cabrera would not have to answer questions about his statement to police, and that Cabrera could not be offered immunity. The State had the opportunity to cure any error when these rulings were made but did not quickly terminate questioning. Instead the prosecutor continued asking explicit leading questions which emphasized Johnson's interest in cocaine and involvement with this particular cocaine buy. Cabrera's refusal to answer these questions thus created damaging and irrefutable inferences.

■■■ The State argues that Cabrera's refusal to answer questions did not add critical weight to the State's case. The test is whether the State made a conscious and flagrant attempt to create damaging inferences from the testimony *or* whether the refusal added critical weight to the State's case.[17] The State's violation of the former category is itself reversible error. In addition, Cabrera's testimony did add weight to the State's case. The evidence for possession was sufficient but not overwhelming. It is impossible to predict the effect of the inferences implicit in Cabrera's refusal to answer the State's last questions. Cross-examination could not refute the inferences to be drawn from the State's suggestive questions as Cabrera was entitled to (and did) invoke the Fifth Amendment privilege in response to any question regarding his statements after arrest.

This court cannot predict what verdict the jury would have rendered if not for the damaging inferences created by this erroneous proceeding. The disparity in sentencing is also instructive. Neither defendant presented evidence. Cabrera made damaging statements which directly connected him to the transaction; Johnson did not. Cabrera, a Hispanic defendant in his forties with three prior out-of-state non-drug convictions, received 30 years incarceration and a fine of $100,000. Johnson, a 32–year–old black defendant with one out-of-state non-drug prior conviction, got life in prison and a $500,000 fine. During deliberations, the jurors asked when Johnson would have to pay his fine and what the parole differences were for sentences of 99 years or life.

To summarize, this Court and the Supreme Court have held that it is reversible error for the State to call a witness who will claim the Fifth Amendment privilege in order to build its case from inferences about that privilege. That is clearly what the State did here. This proposition also warrants reversal of Johnson's case.

The Judgment and Sentence of the trial court is REVERSED and the case is REMANDED for new trial.

JOHNSON, P.J., and LANE and STRUBHAR, JJ., concur.

LUMPKIN, J., concurs in result.

LUMPKIN, Judge, concurring in result.

I concur based solely on the fact the owner of the car was present and known by the officer to be present, as that is the factual issue before us. I do not join in any inferences as to what might happen if the owner were present but that fact was not known to the officer requesting permission to search. Any speculation as to any other fact situation is not properly before the Court, and is therefore dicta.

I also wish to point out the rights against an illegal search and seizure are individual. Therefore, the opinion of the court in this

---

17. *Battenfield,* 816 P.2d at 560.

case does not in any way affect the consent to search given by co-defendant Cabrera.