## RICH v. STATE.

### No. A-11879.

Criminal Court of Appeals of Oklahoma.

Jan. 20, 1954.

Dale & Dale, Guymon, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

JONES, Judge.

The defendant Fred E. Rich was charged by an information filed in the District

Court of Cimarron County with the crime of molesting a child under the age of 14 years, in violation of the statute, 21 O.S. 1951, § 1123. The jury returned a verdict of guilty but were unable to agree upon the punishment to be assessed and the trial court thereupon sentenced the accused to serve the maximum sentence of five years imprisonment in the state penitentiary.

Two assignments of error are presented: (1) The evidence is insufficient to support the verdict for the reason that there was no proof by the State that the act allegedly committed was by an adult person. (2) The evidence is insufficient for the reason that there was no proof that the assault, if any, was committed in a lewd and lascivious manner.

In connection with the first assignment of error, it is clear that the statute provides that the act of intentionally or designedly molesting the body of a child under the age of 14 years can only be committed by an "adult person". Adult persons are defined by statute as being males 21 years of age and females 18 years of age. 15 O.S.1951, §§ 13, 14.

It is true that there is no direct evidence in the record as to the age of the accused. He did not testify and offered no evidence in his behalf. However, this is a material element of the offense and may be proved by circumstantial evidence the same as by direct evidence. Repeatedly in the testimony of the prosecutrix, she referred to the accused as a man. She said "a man grabbed me," and later referred to the accused as "that man". Other witnesses who saw the accused at the home of the prosecuting witness referred to him as "that man" or "this man". At one time in the interrogation of the witness, counsel referred to the accused as "this gentleman". Webster defines a man as "An adult male person." Webster's New International Dictionary, 2nd Ed.

Here the defendant was at all times in the view of the jury. There was no specific issue raised in the lower court that the evidence failed to show that the accused was an adult person, but such question is sought to be raised under a general demurrer to the evidence of the state. In view of the fact that the prosecutrix referred to the accused as a man and pointed him out to the jury during her testimony for the purpose of identification, we hold that this was sufficient in the absence of any proof to the contrary to show that the accused was an adult person as contemplated by the statute under which the prosecution was instituted. The jury was correctly instructed that the burden was upon the state to prove the elements of the offense including that the alleged offense was committed by an adult person. Having seen the defendant in the courtroom, the jury could readily determine he was an adult male.

A consideration of the second assignment of error requires an analysis of the evidence of the State. Corine James, the prosecutrix, was 12 years of age at the time of the commission of the alleged wrongful acts and lived with her parents in Boise City. About 5:00 p. m. on June 27, 1952, Corine returned to her home from a visit to the Farm Bureau Office in Boise City. Her parents had gone to their farm at the time of the arrival of Corine at the James home. She was sitting in the front room playing the piano when the defendant walked into the room without being invited. The first that she knew of the presence of the accused was when he grabbed her arm. The prosecutrix testified that accused grabbed hold of her arm and pulled her off the piano stool. That he told her he worked for the Santa Fe Railroad Company and wanted her to go with him, and that he would pay her well for her trouble. That she refused to go until her parents returned. That she procured an album and showed the accused some of her class pictures and he laid them on the piano bench and pushed her onto the divan. The prosecutrix then testified:

"Q. When he had you shoved back over the davenport did he have his body bent over you? A. A little bit.

"Q. Did he say anything to you there? A. He asked me to go with him again and I said, 'No, I had better wait until mother and father get back.'

"Q. Did he make any other statement? A. He would pay me well for my trouble.

"Q. Did he tell you where he wanted you to go? A. No."

About that time Mrs. Pierson and her daughter Twila Fenton drove up in front of the James home. The prosecutrix and the defendant both saw the Pierson automobile and prosecutrix walked out of the house to the automobile followed closely by the accused. Nothing was said at that time by Corine James concerning the defendant. After inquiry was made of the prosecutrix concerning her mother, the prosecutrix and the accused walked back to the James house. Mrs. Pierson and her adult daughter, Twila Fenton, testified that something appeared to be wrong and they did not leave in their automobile but saw the accused push Corine James back into the house when they arrived at the door. The prosecutrix also said that defendant pushed her into the house. When they went into the James house, defendant looked out the window and saw that the Pierson car had not moved, so he walked outside of the James house, pretended to write down the house number, then walked over to the adjoining house, looked at the house number and left. Corine James then went out to the Pierson car and related what had happened and Mrs. Pierson, her daughter, and Corine James followed the accused in the Pierson car and caused his arrest a few minutes later, while he was in the yard of a utilities company in Boise City.

The defendant was a stranger in the Boise City community, and wholly unknown to Corine James, Mrs. Pierson, or Twila Fenton.

It is emphasized in defendant's brief that Corine James testified on cross-examination that defendant made no improper advances to her and did not touch any part of her body except to lay his hand on her arm, her shoulder, and her neck. That he did not attempt to remove any of her clothing or remove any part of his clothing or expose any part of his body or her body, and that under such circumstances, even though accused was guilty of simple assault, he was not guilty of an assault committed in a lewd and lascivious manner as required by the statute.

The statute under which this prosecution was instituted may be violated by an adult person (1) knowingly making a lewd or indecent proposal to a child under 14 to have sexual relations with him or her or any other person, (2) intentionally and designedly looking upon, touching, mauling, or feeling of the body or private parts of a child under 14 in any lewd, or lascivious manner by any acts not amounting to the commission of any crime against public decency and morality, (3) designedly asking, inviting, enticing, or persuading any child under 14 to go alone with him or her or any other persons to any secluded, remote, or secret place, with the intent and purpose to commit any crime against public decency and morality, or to commit other lewd and lascivious acts on such child in an indecent manner.

■ In the opinion of McKinley v. State, 33 Okl.Cr. 434, 244 P. 208, it was stated:

"The words 'lewd' and 'lascivious,' when used in a statute to define an offense, usually have the same meaning, to wit, an unlawful indulgence in lust; eager for sexual indulgence. Vol. 3, Words and Phrases, Second Series, p. 95; [1] Bouvier's Law Dictionary, [Rawles] Third Revision, pp. 1868, 1869, 1938; 36 Corpus Juris, 1035 et seq.; 8 R.C.L. 'Lewdness,' § 780."

■ Under this definition of lewd and lascivious, the state's proof must show that at the time the defendant laid his hands on the body of Corine James, he was eager for sexual indulgence. The question as to the intent with which the acts were committed was properly submitted to the jury by the instructions of the court. Reading from the printed record, it is difficult for an appellate court to visualize just what occurred. This is accountable in fact on account of the natural revulsion which any person feels toward an adult male who commits such acts as were allegedly committed here by the accused. Here we have a stranger entering a private home unannounced and uninvited. The little 12-year-

old girl stated that she was "scared to death" when she was suddenly surprised at the piano bench by the accused placing his arm upon her. His intent is best shown by her statement that he asked her to go with him and offered her money to do so. These were circumstances bearing upon the intent with which the acts were committed. It is true that this case does not go as far as other cases we have had, where the accused would remove part of the clothing of the little child or touch her private parts or would expose himself in an indecent manner. Yet the statute does not require that the accused must touch the private parts of the person assaulted. The statute is violated by any adult person touching or feeling the body of the child in a lewd or lascivious manner. The absence of any suggestions on the part of the accused of unlawful sexual relations or attempt to maul or feel the private parts of the little girl are matters which go to the weight of the evidence to be considered by the jury in their determination as to the manner in which the acts were committed or the intent with which they were committed. The relationship between the parties; their prior acquaintanceship or lack of acquaintanceship are important factors in determining the question which is presented. This assignment of error is not without substantial merit, as it appears the accused was in the James house for about ten minutes and, according to the prosecutrix, did not use any obscene or profane language or say anything which could not have been repeated in the presence of the parents of the little girl. However, it is our conclusion that the placing of his arm around the neck of the little girl with his insistence that she go with him to some undisclosed place and she would be paid for her trouble, together with all the other facts and circumstances were sufficient to justify submitting the case to the jury for their determination of the guilt or innocence of the accused.

■ As hereinabove noted, the jury was unable to agree upon the punishment and the court gave the maximum sentence of five years imprisonment in the penitentiary. In the case of Winn v. State, Okl.Cr., 236

P.2d 512, this court modified a five-year sentence to three years in a case where the accused had admittedly felt the private parts of the small child in a crowded theatre before his arrest. Undoubtedly, in the instant case, public feeling was intense against the accused because of his wholly unwarranted action, and but for the interposition of the neighbors of the prosecutrix, a more serious crime might have been committed. That, however, is purely conjectural. The acts that were committed do not justify the imposition of the maximum sentence.

The judgment and sentence of the District Court of Cimarron County is therefore modified from a sentence of five years imprisonment in the penitentiary to a sentence of two years imprisonment in the penitentiary, and the judgment and sentence as thus modified is affirmed.

POWELL, P. J., and BRETT, J., concur.