Paul Wayne SULLIVAN, Jr., Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–84–194.

Court of Criminal Appeals of Oklahoma.

March 31, 1986.

John Thomas Briggs, Briggs & Briggs, Pawhuska, for appellant.

Michael C. Turpen, Atty. Gen., Mary F. Williams, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Presiding Judge:

The appellant, Paul Wayne Sullivan, was convicted by a jury in the District Court of Kay County, Case No. CRF–83–89, for the offense of Unlawful Possession of Hashish With Intent to Distribute, After Former Conviction of a Felony. The jury returned a sentence of imprisonment for ten (10) years and a fine of $2,000. Judgment and sentence was imposed in accordance with the jury's verdict, and we affirm.

The appellant was arrested outside the Blackwell Police Department on April 7, 1983, following an altercation with his common-law wife, Ruth Leber. During a search incident to that arrest, the police discovered the appellant in possession of a small quantity of hashish. Early the next morning, Blackwell police approached the appellant's wife, and sought her consent to search the couple's home. The wife, who had been staying at her mother's, led police to the home, produced a key, and allowed police access to the house. Once inside, the officers discovered various drug paraphernalia, including two scales, and a bundle of hashish.

## I.

In his first assignment of error, the appellant claims reversible error occurred when the prosecutor, while reading the Information to the jury, stated that the appellant "did then and there unlawfully, willfully, and feloniously commit the crime of unlawful possession of hashish with intent to distribute, *after former conviction of a felony.*" While it was, of course, error for the prosecutor to mention during the first stage of trial the appellant's alleged status as a habitual criminal, *see* 22 O.S. 1981, § 860(a), no objection was offered to this remark; accordingly the error has been waived. *Cf. Blevins v. State*, 603 P.2d 1168 (Okl.Cr.1979). This assignment of error is without merit.

## II.

For his second assignment of error, the appellant cites no authority. We have repeatedly stated that this Court will not search the books for authority to support an appellant's argument, and such arguments will be held without merit. *See, e.g., Brannon v. State*, 670 P.2d 601 (Okl.Cr. 1983).

## III.

Next, appellant challenges the search of his home by police, claiming that the consent obtained from his common-law wife was invalid. Appellant's argument is essentially two-fold: *First,* he claims his wife was without authority to give consent to the search. *Second,* assuming *arguendo* that his wife did possess authority to au-

thorize the search, the consent obtained from his wife was the result of duress on the part of the police. We reject both contentions.

## A.

■ A warrant is not required for a search which is authorized by a proper consent, the consent acting as a waiver of the warrant requirement. *See, e.g., Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). The issue raised in appellant's first argument questions the authority of his wife to make an effective waiver of the warrant requirement.

The testimony of appellant's wife at a motion to suppress hearing revealed the following: On April 7, 1983, appellant's common-law wife, Ruth Leber, was in the process of moving out of the couple's rental house in Blackwell. She was moving away because of some marital problems, and because appellant had allegedly abused her the previous Saturday. Mrs. Leber used the appellant's pick-up truck to move most of her and their child's belongings out of the house and into her mother's home. She did leave some things at the rent house, and planned to return later to pick them up. She retained a key to the residence. The next morning, at approximately 2 a.m., Officer Vetters of the Blackwell Police Department came to Ms. Leber to obtain consent for a search of the rent house. Consent was given by Mrs. Leber, who accompanied the officers on the search.

■ The issue of whose consent will constitute an effective waiver of the Fourth Amendment's warrant requirement was considered by the United States Supreme Court in *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The Court held that when the prosecution seeks to justify a warrantless search by proving consent, it is not limited to showing consent was given by the defendant; instead, it may show that consent was obtained from a third party who possessed common authority over, or suffi-cient relationship to, the premises or property to be searched. The Court noted that recent authority had clearly validated such consensual searches. *Id.* at 170, 94 S.Ct. at 993. In a footnote, the Court explained what constitutes common authority:

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the coinhabitants has the right to permit the inspection in his own right and that others have assumed the risk that one of their number might permit the common area to be searched.

*Id.* at 171, n. 7, 94 S.Ct. at 993, n. 7 (citations omitted).

■ We have previously held that "in the absence of fraud or express or implied coercion, an affirmative consent to search, given freely and voluntarily by one's spouse, may be used to justify a warrantless search and render its fruits admissible against the absent, nonconsenting spouse, except as to areas and property personal to the nonconsenting spouse and not under joint possession or control." *Burkham v. State,* 538 P.2d 1121, 1124 (Okl.Cr.1975).

■ Appellant contends that the search herein was improper, in that his common law wife had abandoned the premises and therefore no longer had common authority over the dwelling, so as to have authority to give lawful consent. Appellant cites *United States ex rel. Cabey v. Mazurkiewicz,* 431 F.2d 839 (3d Cir.1970) as authority, but that case is distinguishable. In that case, the defendant had been arrested by police, who recovered a key to his garage. Without the defendant's permission, police returned the key ring to the defendant's wife. Later, police went to the wife and requested her permission to search the ga-

rage. The search was disallowed by the Third Circuit Court of Appeals, which noted that the garage was leased solely in the defendant's name, and that the defendant had always kept the single key to the garage in his possession, until it was taken from him by police. In the instant case, however, Ms. Leber had retained her key to the premises, and still had property at the house. She continued to exercise common authority over the dwelling, as evidenced by her intent to return later, at her leisure, and remove the remaining property. Under these circumstances, we find that Ms. Leber had the authority to consent to the search.. *See United States v. Crouthers*, 669 F.2d 635 (10th Cir.1982) (although defendant's wife had left apartment over ten days prior to the search, since she had not totally abandoned either her marriage or the apartment, and still had a key to the apartment, the consent given by her was lawful); *State v. Madrid*, 91 N.M. 375, 574 P.2d 594 (Ct.App.1978) (although wife had left home five months earlier, she could still consent; she still had a right to occupy the premises, still had a key, and had left personal effects there).

### B.

Appellant next contends that his wife's consent was coerced by police. He points to her testimony that police informed her the search was necessary to gather more evidence in an effort to have appellant committed for drug treatment. Police, however, denied this claim.

■ We have previously held that "[v]oluntariness [of a consent to search] is a question of fact to be determined from all the circumstances...." *Holmes v. State*, 568 P.2d 317, 320 (Okl.Cr.1977), citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Moreover, we will refuse to reverse a trial court's determination of voluntariness where there is competent evidence reasonably tending to support the judge's findings. *Isom v. State*, 646 P.2d 1288 (Okl.Cr. 1982).

■ In this case, the police denied any deception. Furthermore, Ms. Leber's actions indicate her consent to search was free and voluntary. This assignment of error is without merit.

### IV.

■ In his fourth assignment of error, the appellant contends he was prejudiced by an evidentiary harpoon inflicted by a police officer during direct examination. However, we note that the defense objection to this testimony was sustained, and, although the jury was not specifically admonished, the trial judge's comments at that time sufficiently purged the evidentiary harpoon of its prejudicial taint. *Cf. Kitchens v. State*, 513 P.2d 1300 (Okl.Cr. 1973).

### V.

■ Finally, appellant complains of several allegedly improper arguments made during summation by the prosecutor. We note, however, that only one of the alleged improprieties was objected to; accordingly, in the absence of fundamental error, the remaining claims have been waived. *Glass v. State*, 701 P.2d 765, 770 (Okl.Cr.1985). Concerning the objected to comment, the trial judge sustained the objection, and admonished the jury. Therefore, any improper taint was cured by the trial court's actions. *Kitchens v. State, supra.*

Accordingly, for the foregoing reasons, the judgment and sentence of the trial court is AFFIRMED.

BRETT and BUSSEY, JJ., concur.