Jack REEVES, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–87–324.

Court of Criminal Appeals of Oklahoma.

Sept. 23, 1991.

Thomas Purcell, Norman, for appellant.

Robert H. Henry, Atty. Gen. of Oklahoma and Susan Stewart Dickerson, Asst. Atty. Gen., Chief, Criminal Div., Oklahoma City, for appellee.

## OPINION

LUMPKIN, Vice–Presiding Judge:

Appellant Jack Reeves was tried by jury and convicted of seven (7) counts of Lewd Molestation of a Minor Child in violation of 21 O.S.Supp.1983 and 1985, § 1123, in the District Court of McIntosh County, Case No. CRF–86–44. The jury recommended as punishment four (4) years imprisonment on each of Counts I and VI, five (5) years imprisonment on each of Counts II and III, six (6) years imprisonment on Count V, and ten (10) years imprisonment on Count VII. The trial court sentenced accordingly and it is from this judgment and sentence that Appellant appeals.

Appellant was convicted of molesting four (4) young boys, ages thirteen through fifteen, during the fall of 1985. The victims, B.H., L.B., S.T., and R.J. met Appellant through his son, "Little Jack" with whom they were school friends. Each of the boys testified that the molestations occurred when they were at Appellant's trailer house spending the night with "Little Jack". The basic scenario for each of the molestations was similar with three of the boys testifying to being alone in the trailer with "Little Jack" and the Appellant. At one point during the evening, Appellant would ask "Little Jack", using a variety of reasons, to leave the room. Appellant would then ask his victim if he had ever had sex. Regardless of the answer he received, Appellant said he would have to measure the victim's penis, and if it mea-

sured to a particular length, he would bring some girls over.

B.H. testified that he resisted, but Appellant grabbed his hands behind his back and forced him to comply. L.B. said he complied because he thought all the guys were doing it, and S.T. said he was talked into it. As a result of the boys protests or "Little Jack's" return to the room, Appellant stopped the molestation. Appellant told the boys to go to bed and told his victim to wake him up later and he would call the girls to come over.

B.H. testified that he went to sleep in "Little Jack's" room, but woke up later to remind Appellant as requested. In Appellant's bedroom, B.H. was told no girls were coming over and Appellant proceeded to orally sodomize B.H. B.H. was able to eventually escape from Appellant and returned to "Little Jack's" room. B.H. did not see Appellant again until after Christmas 1985, when Appellant and "Little Jack" were to pick him up to spend the night with "Little Jack". When Appellant arrived without "Little Jack", B.H. was hesitant to get in the truck alone with him. However, he consented when told they were going to pick up "Little Jack". On the way, Appellant molested B.H.

S.T. testified that he also woke Appellant as requested and was also molested in Appellant's bedroom. S.T. further testified to another incident at Bob's Boat Storage. S.T., knowledgeable about car repairs, had gone with Appellant to the boat storage to help repair his truck. Once Bob left the room, Appellant asked S.T. if he wanted to "mess around". S.T. was then forced to commit oral sodomy on Appellant. S.T. testified to another incident occurring at Appellant's apartment in Checotah during Christmas vacation 1985. Along with B.H., "Little Jack", Appellant and his girlfriend, S.T. was present for a beer party. Having drunk several beers, S.T. remained in the apartment when the others left to buy more beer. Appellant, who had also remained behind, forced S.T. to commit oral sodomy.

Thirteen year old R.J. testified to spending four nights with "Little Jack" at the trailer house. One morning, Appellant woke him up and asked him to come into the kitchen. Appellant proceeded to orally sodomize R.J. Appellant then asked if he could take a photograph of R.J. Despite his protests, Appellant forced R.J. to remove his clothes and took a picture of the naked boy. Appellant put the photograph in the pocket of his robe and told R.J. not to tell anyone about it.

Appellant took the stand in his own defense and testified that the boys were lying and that they and their families had conspired against him because of his prior relationships with various family members.

■ In his first assignment of error, Appellant contends that the trial court erred in excluding the public from the courtroom during the testimony of the victims. Relying on *Globe Newspaper Company v. Superior Court for the County of Norfolk*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982), and *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), the Appellant argues that closure was not warranted upon the facts and that the trial court failed to consider reasonable alternatives to closure.

After the opening statements had been given, the State moved to clear the courtroom of all those not directly involved in the case during the testimony of the juvenile victims, on the grounds that "they are juveniles and the nature of the testimony about which we expect the testimony to center on is a very sensitive matters that are difficult and rather embarrassing to all parties involved ..." (Tr. 55). The trial court overruled the defense objection and closed the courtroom during the testimony of the juvenile victims. (Tr. 55–56)

■ The right to a public trial is provided in both the United States and the Oklahoma Constitutions. U.S. Const. amend. VI, Okla. Const. art. II, § 20. Although this right is of constitutional stature, it is not absolute. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). This right may not be abridged without "findings that the closure is essential to preserve higher values

and is narrowly tailored to serve that interest." *Press–Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984).

In *Globe Newspaper Company,* the Court addressed the First Amendment rights of the press and the public to a criminal trial. The Court held that a state statute mandating closure of a trial for rape of a minor violated the First Amendment rights of the press and general public. On appeal, the Massachusetts Supreme Judicial Court interpreted the statute as requiring, under all circumstances, the exclusion of the press and public during the testimony of a minor victim in a sex-offense trial. On appeal to the United States Supreme Court, the Supreme Court reversed the Massachusetts Supreme Court and held that the mandatory closure rule violated the First Amendment rights of the press and general public to attend a criminal trial. The Court found that the State's interests in protecting minor victims of sex offenses from further trauma and embarrassment and the encouragement of such victims to come forward and testify in a truthful manner, while compelling reasons, did not justify a mandatory closure of the entire trial. Trial courts must determine on a case-by-case basis whether closure is necessary to protect the welfare of a minor victim.

*Globe* is distinguishable from the present case in that it focused on the First Amendment rights of the press and public to a public trial. The Court refused to consider *Globe's* additional argument that the statute violated the Sixth Amendment as the right to a public trial is personal to the defendant. *Gannett v. DePasquale,* 443 U.S. 368, 380, 99 S.Ct. 2898, 2905–6, 61 L.Ed.2d 608 (1979). The Appellant in the instant case therefore, cannot rely on *Globe* as he has standing only to bring a Sixth Amendment claim. Further, the Supreme Court held that mandatory closure was not justified because the State's interests could be served just as well by requiring a case-by-case analysis of closure. In the present case, the court was not mandated to close the courtroom, but did so on its own discretion.

The trial court's discretion to close a courtroom and its effects upon the defendant's Sixth Amendment right to a public trial were considered in *Waller v. Georgia,* wherein the Supreme Court stated that the public-trial guarantee has been uniformly recognized as created for the benefit of the defendant. In *Waller,* the trial court closed an entire suppression hearing to all parties not directly involved on the basis that wiretap evidence would include references to alleged offenders not then on trial. The Georgia Supreme Court held on appeal that the trial court properly balanced the petitioner's right to a public hearing against the privacy rights of others under Georgia law and the Sixth Amendment. On appeal to the United States Supreme Court, the case was reversed with the Court holding that the trial court was not justified in closing the entire suppression hearing. Citing to *Press–Enterprise v. Superior Court of California,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), the Court stated that the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure. Under these criteria, the court was not justified in closing an entire suppression hearing which lasted seven (7) days wherein the wiretap tapes lasted only 2½ hours and few of them mentioned or involved parties not then before the court.

The limited closure in the present case provided a much less restrictive means for protecting compelling State interests than that provided in *Waller.* We find that the interests advanced by the State for closure, safeguarding the physical and psychological well-being of the minor victims, justifies the limited closure in the present case. Closing the trial to the press and general public during the testimony of the thirteen, fourteen and fifteen year old victims to a sex offense was a narrowly tailored means of accommodating the State's interest. It was also a sufficient method of protecting

the Appellant's right to a public trial. Except for the testimony of the juvenile witnesses, the entire trial was open to the press and general public. Moreover, the Appellant's opportunity to cross-examine the juvenile witnesses was not abridged and neither was he impeded in any way from presenting his defense.

In *Waller*, the Supreme Court noted that a public trial is for the benefit of the accused in that the public may see that he is fairly dealt with and not unjustly condemned, that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their function, and that it encourages witnesses to come forward and discourages perjury. Appellant has failed to show how this limited closure infringed upon the above considerations or in any way prevented him from receiving a fair trial.

This Court has previously recognized the strong preference for public trials in *Davis v. State*, 728 P.2d 846, 848 (Okl.Cr.1986); *Neal v. State*, 86 Okl.Cr. 283, 192 P.2d 294 (1948). In *Davis*, we stated that this preference does not preclude a limited closure from the public where there is a clear need for excluding certain persons or classes. In upholding the trial court's decision to clear the courtroom of spectators during the testimony of the sixteen (16) year old rape victim, we found that the closure was sufficiently limited and that the appellant suffered no prejudice thereby.

After a thorough examination of the record in the present case, we find that the trial court did not abuse its discretion in closing the trial to the press and general public during the testimony of the juvenile victims. While the trial judge did not enunciate on the record consideration of available alternatives, we cannot presume that he did not consider all available alternatives. Further, although the trial court's findings as to the reasons for closure were brief, we find them sufficient to support the limited closure. Accordingly, this assignment of error is denied.

■ Appellant alleges in his second assignment of error that the State failed to follow the proper procedures in filing its Amended Information and that he was therefore improperly subjected to trial on Count V, which was dismissed at the preliminary hearing, without proof of additional evidence. We would initially note that Appellant has waived any allegation of error by his failure to enter a contemporaneous objection at trial. When a defendant pleads to an information and proceeds to trial, he waives his right to attack the sufficiency of the information on appeal. *Short v. State*, 634 P.2d 755, 757 (Okl.Cr. 1981). Here, Appellant objected to the lack of specific dates of the alleged incidents while clearly stating that he was not objecting to what he was charged with. (Tr. 6–8) Therefore, we will review only for fundamental error.

■ Appellant was originally charged on April 28, 1985, with nine counts of lewd molestation. Four of these counts involved S.T. as the victim. Briefly, these counts were Count V, which occurred on or about December 6, 1985, at Shepherd Estates (the trailer park); Count VI, which occurred on or about December 20, 1985, at Shepherd Estates; Count VII, which occurred on or about January 14, 1986, at the low-rent apartment in Checotah; and Count VIII, which occurred on or about February 13, 1986, at Enchanted Oaks (home of S.T.'s uncle).

At the preliminary hearing, held July 11, 1986, S.T. testified to Counts V, VI, and VII. However, he denied being molested by Appellant at Enchanted Oaks (Count VIII), stating he had never been at that location with Appellant. S.T. also testified to a previously uncharged incident occurring at Bob's Boat Storage when the Appellant forced S.T. to commit oral sodomy. At the close of the preliminary hearing, the trial court found the evidence supported three separate acts of molestation against S.T.: a fondling incident in December 1985, and two instances of forcible oral sodomy. The Appellant was subsequently bound over for trial on Counts V, VI, and VII, with Count VIII being dismissed.

On July 17, 1986, an Amended Information was filed charging Appellant with

three counts of lewd molestation of S.T.; Count IV, on or about December 1985, at Shepherd Estates; Count V, on or about December 1985, at Bob's Boat Storage, and Count VI, on or about January 1986, at the low-rent apartment in Checotah. At trial, S.T. testified to three incidents of molestation, at the trailer, the boat storage and the low-rent apartment.

In *Vanscoy v. State*, 734 P.2d 825 (Okl. Cr.1987), the defendant was originally charged with one count of indecent exposure. At the conclusion of the State's case at the preliminary hearing, the magistrate announced that, in his opinion, sufficient cause had been shown of two distinct acts of indecent exposure. The State orally moved to include a second incident in the Information to comport with the evidence adduced at the preliminary hearing. At the conclusion of the hearing, the magistrate bound the defendant over for trial on both counts of indecent exposure. An amended information was immediately filed with the court clerk. Pursuant to 22 O.S.1981, § 264, we upheld that procedure and quoted to *Webster v. District Court of Oklahoma County*, 473 P.2d 277, 279 (Okl. Cr.1970), that "[a]n examining magistrate may hold the accused for trial for the offense originally charged, or for any other offense, as the facts may warrant." 734 P.2d at 829.

In *Webster*, the magistrate found that the charged offense was not supported by the evidence, but that probable cause for a different, uncharged offense existed under the evidence. The defendant was subsequently bound over for trial on the different charge, and an Amended Information incorporating that offense was filed immediately thereafter. Today, we reaffirm our holdings in *Vanscoy* and *Webster* and find that the magistrate in the instant case properly bound the Appellant over for trial for the lewd molestation occurring at Bob's Boat Storage.

When this evidence was incorporated into the Amended Information, Count V alleged that the Appellant forced the victim to commit oral sodomy at "Bob's Boat Storage, Enchanted Oaks, McIntosh County, Oklahoma." (O.R. 20) Although Bob's Boat Storage and Enchanted Oaks are two distinct places, we do not find the reference to both locations fatal error. The reference to Enchanted Oaks was merely superfluous language which did not affect the trial of Appellant on this count. *Givens v. State*, 705 P.2d 1139, 1142 (Okl.Cr.1985). *See also Martley v. State*, 519 P.2d 544, 547 (Okl.Cr.1974).

■ An information is sufficient if it complies with the requirements of 22 O.S.1981, § 401, adequately informs the defendant of what he must be prepared to defend against and prohibits the possibility of the defendant subsequently being put in jeopardy a second time for the same offense. Appellant was adequately advised of the precise charges against him through the amended information and evidence from the preliminary hearing.

Appellant directs this Court's attention to *Jones v. State*, 481 P.2d 169 (Okl.Cr. 1971), and argues that the State's failure to follow the procedure set forth therein constitutes reversible error. In *Jones*, the appellant was initially charged with sale of marijuana. After a preliminary hearing, the charge was dismissed. The State refiled the same charge under a new case number and proceeded to preliminary hearing. The State presented the same witnesses and testimony as previously offered with no additional evidence. We found this procedure to be improper stating that when a magistrate at a preliminary hearing rules the evidence insufficient to hold the defendant for trial, neither the magistrate nor any other magistrate should entertain another filing against the same defendant for the same offense unless the State makes an offer of additional evidence or proves other good cause to justify another preliminary examination. Additional or new evidence does not mean that which was known to the State at the time of the first preliminary or which could have been easily acquired. 481 P.2d at 171.

The present case is clearly distinguishable. The alleged molestation at Enchanted Oaks was dismissed at preliminary hearing. Under *Jones*, the State was prohibited

from refiling on that same incident without presenting additional evidence from that shown at the preliminary hearing. However, the State did not refile on the dismissed Enchanted Oaks incident, but instead filed on the previously uncharged incident at Bob's Boat Storage. *Jones* does not address filing on a previously uncharged incident and is therefore not applicable to the instant case. Finding no error of a fundamental nature, this assignment of error is denied.

■ In his third assignment of error, Appellant alleges that he was improperly restricted in his efforts to impeach the State's witnesses through the use of the preliminary hearing transcript and the affidavit of a law enforcement officer attached to the original information.

Appellant's defense was innocence and that his alleged victims were lying. Therefore, on cross-examination, he sought to exploit any inconsistencies in their statements. This was accomplished through the use of the transcripts of their preliminary hearing testimony. Appellant also sought to introduce into evidence the entire preliminary hearing transcript. The trial court denied admission in its entirety because the witnesses had been available for cross-examination and denied admission in parts because of the danger of emphasizing certain testimony to the detriment of other testimony.

It is well established that the scope of cross-examination lies in the sound discretion of the trial court. This Court will not interfere with the trial court's decision to limit cross-examination unless there is an obvious and prejudicial abuse of discretion. *Reaves v. State*, 649 P.2d 780, 784 (Okl.Cr. 1982); *Locke v. State*, 554 P.2d 847, 850 (Okl.Cr.1976), *cert. denied* 429 U.S. 985, 97 S.Ct. 503, 50 L.Ed.2d 596 (1976). Unless Appellant can show that the trial court abused its discretion by unduly restricting the extent of cross-examination, no claim of error will lie. *Sherrick v. State*, 725 P.2d 1278, 1281 (Okl.Cr.1986). We find no such abuse of discretion in the present case.

Appellant argues that the trial court's ruling was not consistent with relevant case law citing to *State v. McBlair*, 670 P.2d 606 (Okl.Cr.1983). In *McBlair*, defense counsel impeached the State's witness concerning prior inconsistent statements without the benefit of a transcript of the prior statements. Before this Court on a reserved question of law, the case addressed the issue of when is it error for the court to allow defense counsel to cross-examine a State's witness regarding prior inconsistent statements without a certified transcript of the prior testimony. We held that if the witness denies the making of the inconsistent statement, or fails to admit it, the cross-examiner must prove the making of the statement at the next stage of giving evidence. This may be accomplished by introducing into evidence the applicable portions of the transcript but proving up prior inconsistent statements is not limited to that procedure.

In the present case, defense counsel thoroughly cross-examined each victim with his preliminary hearing testimony, referring to specific pages and lines from the transcript. Under these circumstances the objective of cross-examination had been realized. Prohibiting the introduction of the preliminary hearing transcript did not injure Appellant as he was not denied the opportunity to question the credibility of his accusers. This decision is consistent with prior case law. *See Kelsey v. State*, 569 P.2d 1028, 1031 (Okl.Cr.1977), wherein we quoted to *Eubanks v. State*, 327 P.2d 491 (Okl.Cr.1958), stating:

> A witness may be impeached by showing that his testimony at the preliminary hearing was different from the testimony given at trial. This may be done by calling the attention of the witness to the specific question and answers given at the preliminary which are contradictory. The entire transcript of the testimony of the witness should not be admitted either to show or to rebut contradictions in his testimony.

■ Appellant further contends that he was improperly prohibited from using the affidavit of probable cause attached to the original information to refresh the memory of Deputy Lawson. Appellant argues that

an important piece of evidence was that the witnesses, with the exception of Roy Jones, originally told Deputy Lawson that the alleged acts occurred on specific dates. At trial, the witnesses could not remember specific dates, but testified only to general dates. On cross-examination, Lawson testified that he and Judy Freeman from the Welfare Department had interviewed the victims at school and had been given specific dates on which the offenses were to have occurred. Admitting that he had originally been given specific dates, Deputy Lawson stated that he could not then remember the exact dates. Appellant then attempted to inquire about the affidavit Lawson signed and filed with the information. An objection by the State was sustained and the Appellant was prohibited from referring to the document. Appellant now contends that he should have been able to admit the entire affidavit into evidence or at the very least, had its contents read to the jury.

The affidavit to which Appellant refers is the affidavit of probable cause, signed by Deputy Lawson and the magistrate, and filed with the information. It states in pertinent part, "after investigation, this officer has reason to believe there is probable cause that the said Jack Reeves committed the said crimes." (O.R. 5) Contrary to Appellant's argument, the affidavit itself does not recite any of the allegations, particularly the dates of the alleged offenses, contained in the information. As such, admitting into evidence the affidavit or reading its contents to the jury would not have addressed any inconsistencies in the dates of the offenses. Therefore, Appellant was not prejudiced by its exclusion.

Despite the exclusion of the affidavit, Appellant was able to fully cross-examine Deputy Lawson concerning any inconsistencies as to the dates of the offenses. In addition to testifying that he had originally been given specific dates, Lawson also testified that he signed and filed an amended information which did not contain the specific dates. Accordingly, we find that the trial court did not abuse its discretion in limiting the cross-examination of Deputy Lawson and this assignment of error is denied.

■ Appellant contends in his fourth assignment of error, that the trial court erred in admitting into evidence State's Exhibit No. 1, as it was the product of an illegal search and seizure. Appellant was arrested in California at the home of his ex-wife. Kenneth Majors of the Los Angeles Police Department testified at the in-camera hearing that he executed the arrest warrant and took Appellant into custody. Appellant's 1979 Chevrolet Blazer was parked in front of the apartment. Earlier that day, Majors had interviewed Appellant's son and learned that the red and white Blazer belonged to his father and was full of his father's belongings. As Appellant was taken from the residence, Majors asked Appellant if he wanted to lock the truck. Appellant replied that everything he owned was in the truck but that it would be safe there. Once Appellant was booked into jail, Detective Majors reviewed his notes about the case and came across information from Judy Freeman of the Welfare Department about photographs of at least one of the victims in Appellant's possession. Detective Majors returned to the residence of Appellant's ex-wife and asked if he could search the vehicle. She consented and handed him the keys. Inside the vehicle, in the pocket of a shirt, Detective Majors discovered a nude photograph of R.J.

Majors further testified that he did not search the vehicle when he first arrested the Appellant because he had forgotten about the photographs. Upon reviewing his notes and the information concerning the photograph, he immediately returned to the scene. Under the policy of the Los Angeles Police Department once the Appellant was fingerprinted and booked into jail he was allowed an unlimited number of phone calls and Majors was afraid that Appellant would call and have the vehicle moved.

At trial, admission of the evidence was advanced under the theories of consent (by Appellant's ex-wife) and probable cause— exigent circumstances with the evidence ultimately admitted under the later theory.

On appeal, Appellant contends that neither theory supported admission. We find it is unnecessary to address both theories as the evidence was properly admitted as the result of a legal warrantless search authorized by the consent of Appellant's ex-wife.

■ The issue of whose consent will constitute an effective waiver of the Fourth Amendment's warrant requirements was addressed by this Court in *Sullivan v. State*, 716 P.2d 684, 684 (Okl.Cr. 1986), wherein we relied upon *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The United States Supreme Court held that when the prosecution seeks to justify a warrantless search by proving consent, it is not limited to showing consent was given by the defendant; instead, it may show that consent was obtained from a third party who possessed common authority over, or sufficient relationship to, the premises or property to be searched. Mutual use of property, or joint access or control of property, was held to be generally sufficient. The burden rests upon the prosecution to prove adequate authority by a preponderance of the evidence in third party consent cases. *See Matlock*, 415 U.S. at 177–78, 94 S.Ct. at 996–97. Even if the consenting party does not in fact possess actual authority to consent, a warrantless search may be justified when the authorities have reason to believe the consenting party has apparent authority. *United States v. Yarbrough*, 852 F.2d 1522, 1534 (9th Cir.1988); *United States v. Hamilton*, 792 F.2d 837, 841–42 (9th Cir. 1986); *United States v. Sledge*, 650 F.2d 1075, 1077–78 (9th Cir.1981). *See also Illinois v. Rodriguez*, 497 U.S. ——, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).

Detective Majors testified that the vehicle was parked on a public street in front of the residence of Appellant's ex-wife. When he returned to search the vehicle, the ex-wife handed him the keys which had been laying on a bar countertop. Majors

testified that upon handing him the keys, she said ".. it was funny that I was coming out and asking her to search the vehicle, because Jack had just finished call[ing] her on the phone, just prior to my arrival out there, giving her instructions to move the car." (Tr. 208) She further explained that Appellant had told her to move it a couple of blocks away.[1]

Appellant testified the Blazer was registered in the name of his oldest son, but that he had had possession of it since March 1985. Appellant said that he had driven the Blazer while in Oklahoma and on trips to and from Oklahoma and California. He had driven it to his ex-wife's the night before he was arrested and parked it in front of the apartment. Appellant denied giving his ex-wife authority over the vehicle or leaving her the keys. He stated that the keys were on a countertop bar and he merely left them there when he was arrested. Appellant also denied calling his wife to move the vehicle and testified that he called his friend Dick Snow and requested that he move the vehicle. When Mr. Snow called Appellant's ex-wife for the keys, she refused to give them to him.

Although much of the testimony was contradictory, sufficient evidence was presented to the trier of fact to support a finding that Appellant's ex-wife had access and control of the vehicle and so was authorized to give her consent to a search and that Detective Majors reasonably concluded that she had common authority over the Blazer so as to give consent. *See also United States v. Trzaska*, 859 F.2d 1118, 1121 (2nd Cir.1988); *United States v. Carouthers*, 669 F.2d 635, 642–43 (10th Cir. 1982). Therefore, this assignment of error is denied.

■ In his final assignment of error, Appellant contends that the jury was not properly instructed on the essential elements of the offense of lewd molestation.

1. Detective Major's testimony concerning Appellant's ex-wife's remark about the phone call was objected to by the defense as inadmissible hearsay. Although the trial court ruled it was not hearsay, stating that it was not admitted for the truth of the matter asserted, we find that it was

hearsay, properly admitted under 12 O.S.1981, § 2803(1), "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter".

Instruction No. 6 sets forth the elements of the offense, and to this instruction Appellant neither raised an objection at trial nor offered an alternative instruction. Therefore, we will review only for fundamental error. *Drake v. State,* 761 P.2d 879, 882 (Okl.Cr.1988); *Abbott v. State,* 655 P.2d 558, 559 (Okl.Cr.1982).

Appellant was charged with the second of three alternatives under 21 O.S.1981, § 1123:

... Any person who shall intentionally look upon, touch, maul or feel the body or private parts of any child under sixteen (16) years of age in any lewd or lascivious manner by any acts not amounting to the commission of a crime against public decency and morality, as defined by law; ...

Instruction No. 6 provides:

No person may be convicted of lewd molestation unless the State has proven each element of the crime beyond a reasonable doubt. These elements are: First: the accused must be over the age of 18 years; Second: who in any manner lewdly and lasciviously; Third: looks upon, touches, mauls, or feels; Fourth: the body or private parts; Fifth: of a child under the age of 16 years; Sixth: in any indecent manner or in any manner relating to sexual matters or sexual interest; Seventh: the accused must be at least 3 years older then the victim.

(O.R. 37)

Appellant specifically complains that the jury was not instructed that the alleged acts must have been "acts not amounting to the commission of a crime against public decency and morality" but instead was given the test of "any indecent manner...." from the third alternative and that the instruction failed to allege that the acts must have been done "intentionally."

Reading Section 1123 in its entirety, it is apparent that the Legislature intended to establish as the criminal offense of lewd molestation three different types of conduct: (1) making a lewd or indecent proposal to a child under sixteen (16) years to have unlawful sexual relations; (2) looking upon or touching the body or private parts of a child under sixteen (16) years; and (3) inviting or persuading a child under sixteen (16) years to go alone with any person to a secluded or secret place with the intent to lewdly touch the child's private parts. Whether the act was committed in a manner which constitutes a crime against public decency or morality or in a manner relating to sexual matters is Legislative direction that acts not amounting to another criminal offense may be charged under this subsection. The phrase in the second alternative that the acts must have been committed in a manner not amounting to a crime against public decency and morality is not an element of the offense. The phrase merely informs the prosecutor that a crime exists for conduct which is less than that which is provable rape or sodomy.

The jury in the present case was instructed that the act must have been committed in a lewd and. lascivious manner. Lewd and lascivious was defined in Instruction No. 7 to mean an unlawful indulgence in lust or eagerness for sexual indulgence. *See Rich v. State,* 266 P.2d 476, 479 (Okl. Cr.1954). To instruct the jury further that the conduct must consist of acts not constituting a crime against public decency and morality would only serve to confuse the issue and the jury. Therefore, we do not find error in the exclusion of the phrase concerning public decency and morality.

▉ Further, we do not find error in the failure to include in Instruction No. 6 the word "intentionally". Reading the instructions in their entirety, and in particular Instruction No. 7 defining lewd and lascivious, the jury was adequately instructed as to the element of intent. Instructions to the jury are sufficient when, read as a whole, they fairly and adequately state the applicable law. *Nealy v. State,* 636 P.2d 378, 382 (Okl.Cr.1981). This Court will not reverse a case if the instructions generally cover the subject matter of inquiry and there is no fundamental error. *Luckey v. State,* 529 P.2d 994 (Okl.Cr. 1974). Finding no fundamental error, this assignment of error is denied.

For the foregoing reasons, the judgment and sentence is AFFIRMED.

JOHNSON and BRETT, JJ., concur.

LANE, P.J., concurs in result.

PARKS, J., dissents.

LANE, Presiding Judge, concurring in result.

I agree with the majority in affirming the Appellant's judgment and sentence. I write separately to address Appellant's first, second and fourth assignment's of error.

I agree with the majority's analysis and conclusion that in light of *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) the closing of the courtroom to the public during the victims' testimony was proper. In this case the state prosecutor sufficiently articulated the reasons for the closure. Although the trial judge made only a conclusory statement that the courtroom should be closed, we can infer that he adopted the prosecutor's argument.

I propose a better practice would be for the trial judge to specifically set forth in writing the reasons for the closing of the courtroom to the public or in the alternative enunciate these findings and conclusions on the record. I foresee a reversal on this issue in a future case where the facts are weaker and the prosecutors argument is not as succinctly articulated.

In the second assignment of error, Appellant alleges the trial court improperly subjected him to trial on count five of the Amended Information which he alleges was dismissed at the preliminary hearing. I agree that it is clear the magistrate intended to bind Appellant over for trial for the lewd molestation of S.T. which occurred at Bob's Boat Storage. The trial judge stated at the conclusion of the preliminary hearing that "evidence submitted shows there were three separate incident's. . . . a second act which consisted of forced sodomy by the witness." (Tr. 96). A review of the record reveals the second act of forced sodomy referred to by the Judge is the incident at Bob's Boat Storage.

I agree with the majority that the inclusion of "Enchanted Oaks" in count five of the Amended Information did not amount to fundamental error. However, I adamantly disapprove of the use of *Miller v. State,* 809 P.2d 1317 (Okl.Cr.1991) and *Moore v. State,* 809 P.2d 63 (Okl.Cr.1991), to support the majority's conclusion, nor do I believe it is necessary to utilize these cases to resolve the issue presented.

I disagree with the majority's finding that the photograph (State's Exhibit No. 1) was properly admitted as a legal warrantless search authorized by the consent of Appellant's ex-wife. The majority refers to *Sullivan v. State,* 716 P.2d 684, 686 (Okl.Cr.1986), where we stated that when the prosecutor seeks to justify a warrantless search by proving consent, the State must show the consent was obtained from a third party who possessed common authority over, or had a sufficient relationship to the premises or property to be searched.

In this case, the only evidence offered by the State was the testimony of Detective Majors. He stated the Appellant's ex-wife had Appellant's keys and that she was told by the Appellant to move the car. Appellant denies giving his ex-wife authority to move the vehicle and claims he did not give her the keys but placed them on the countertop and left them when he was arrested. The evidence in support of the State's contention that the ex-wife had common authority over the vehicle is weak at best. In light of our holding in *Sullivan,* the State did not meet its burden of proving the ex-wife had adequate authority to consent to the search. There was insufficient evidence presented to the trier of fact to support a finding that Appellant's ex-wife had common authority over or any relationship to the vehicle.

I agree with the trial judge's ruling that the search of the vehicle was proper under the exigent circumstances exception to the warrant requirement. Where there are exigent circumstances in addition to probable cause, an officer may legitimately make a search without a warrant. *Blackburn v. State,* 575 P.2d 638, 642 (Okl.Cr.1978).

Probable cause exists where the facts preceding the search are sufficient to warrant an officer to reasonably infer contraband is within the vehicle. *Gonzales v. State*, 525 P.2d 656, 658 (Okl.Cr.1974). The detective knew the Appellant had taken a nude photograph of one of the victims and had kept the photograph. The detective knew the appellant did not have a permanent residence. During the arrest Appellant informed the detective that all of his belongings were in the vehicle. From these facts the detective could reasonably conclude the photograph was in the vehicle along with Appellant's other possessions.

Assuming there was probable cause to believe the vehicle contained the photograph, a determination of whether exigent circumstances existed must still be made. Exigent circumstances exist where it is not practical to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought. *Carroll v. U.S.*, 267 U.S. 132, 152, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1924). The existence of emergency, otherwise known as "exigent circumstances" permits a law enforcement officer to substitute his judgment for that of a neutral magistrate to the existence of probable cause to make a search. *Hughes v. State*, 552 P.2d 1154 (Okl.Cr.1976).

The detective reasonably concluded exigent circumstances existed requiring an immediate search of the vehicle. First, the detective knew the vehicle was about to be moved at the request of the Appellant. After the arrest Appellant contacted either his ex-wife or a friend to move the Blazer. Second, the detective knew there would be ample opportunity to move the property during his absence due to the delay in obtaining a search warrant after 5:00 p.m. in Los Angeles and the distance required to travel from the location of the vehicle to the District Attorney's office and back. In light of the aforementioned facts, the search of Appellant's vehicle was proper.