[No. G014248. Fourth Dist., Div. Three. Dec. 29, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
PEDRO RENTERIA CASTANEDA, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and IV.

**COUNSEL**

Richard Schwartzberg, under appointment by the Court of Appeal, for Dependant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Keith I. Motley and Douglas P. Danzig, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SILLS, P. J.**—Pedro Renteria Castaneda appeals from the judgment imprisoning him for 44 years for 29 counts of child molestation involving his teenaged stepdaughter and his 7-year-old daughter, along with 2 separate enhancements due to his position of trust and substantial sexual conduct he committed. The actual charges stem from his act of raping his stepdaughter for the first time in 1984 while his wife was in the hospital delivering their daughter and continue for more than seven years until he started fondling the natural daughter born to him on that fateful day. He contends the trial court erred when it admitted evidence of other, uncharged sexual acts he committed against his stepdaughter and when it denied his motion for acquittal at the end of the prosecution's case. He also alleges reversible error occurred when the court instructed the jury on the reasonable doubt standard as defined in CALJIC No. 2.90.[1] Finally, he argues the sentencing court erred by failing to state reasons for imposing consecutive sentences. We affirm.

I

### FACTS

The details of this gruesome and hideous incest consume many pages of testimony. However, in summary, Castaneda fondled, and later raped, his stepdaughter, Marie, from the time she was five years old until she finally reported him to the authorities at age sixteen after discovering he was molesting her seven-year-old half sister. During this 11-year period, Marie was repeatedly beaten by both her stepfather and her natural mother and threatened with death by him.

Marie's natural father abandoned her mother before Marie was born. When Marie was five, she was living with her mother and godmother in Santa Ana where Castaneda was renting a sleeping area in the garage. Castaneda and Marie's mother started living together, giving him access to Marie at all hours. He would place his hands under her clothes and touch her genitals "every time he had the chance." Marie was removed from this home by the authorities because she was badly beaten by her stepfather and mother; she was not returned to them until several months later when she was six. Upon her return, the sexual abuse recommenced with Castaneda

---

[1]We can dispense with this contention immediately. The same issue was raised and recently rejected by the United States Supreme Court in *Victor* v. *Nebraska* (1994) 511 U.S. __ [127 L.Ed.2d 583, 114 S.Ct. 1239]. The California Supreme Court upheld the language, albeit with concerns (*People* v. *Freeman* (1994) 8 Cal.4th 450, 385-386 [34 Cal.Rptr.2d 558, 882 P.2d 249]) and therefore, so must we. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

touching her genitals and occasionally penetrating her vagina with his fingers at least twice weekly.

In June 1984, Marie's little sister, Elizabeth, was born. While her mother was in the hospital, Castaneda raped Marie for the first time. She told him to stop because he was hurting her. He was very drunk, and it was very painful. He told her not to complain because what he was doing was all right; all fathers did it to their daughters. As she was only nine, she believed him.

After that, he would rape her once or twice a week. From June 1984 to July 1987, intercourse was a regular weekly—or semiweekly—element of life at home for Marie. He would also occasionally fondle her or orally copulate her.[2] The one period which was an exception was the summer of 1985 when Castaneda went to Mexico just before Marie's brother's birth.

In June 1987 Marie had a shocking experience. Some people came to her school and talked about "bad touches." For the first time, she discovered what her stepfather was doing to her was wrong. She had always believed Castaneda when he told her that what he was doing was done by all fathers and was all right. She was so upset by the revelation, she ran from the classroom to a bathroom and sat there crying.

Thereafter, Marie told him to stop touching her. She told him she wanted him to stop hurting her. His response was that it was all her fault because she had "let" him do it all those years. He ignored her entreaties. She did not tell her mother because her mother had never protected her from her stepfather and beat Marie incessantly herself.

In July 1987, Marie could not stand it any longer. When she told her mother what was happening, her mother yelled at her, called her a liar and then beat her with a stick. She ran away from home. She was taken to Orangewood Children's Home along with her brothers and sister after she complained of the beatings. She never told the authorities about the rapes because she was petrified Castaneda would beat her more severely than he already did if she ever mentioned him. As it was, he hit her whenever he drank to excess, which occurred almost daily at this point.

While she was in foster care for the second time, Marie was sent home to visit her mother and stepfather on weekends. Castaneda continued to molest her during these visits, and at night, he tried to fondle her. At least once a month, he succeeded in raping her. He threatened Marie with death if she reported him, and threatened to kill her brothers and sister if she said anything to anyone.

---

[2]Apparently, the whole family resided in a single bedroom during this period.

In January 1989, a social worker told Marie's mother that she had to sever her living arrangements with Castaneda. Marie was returned to her mother's custody once a residence separate from her stepfather was found. This separation lasted about six months, although Castaneda continued to visit Marie and her mother and sister on weekends in violation of the social worker's order. Thus, the sexual abuse continued, with Castaneda raping Marie at least three times during the six-month period.

In summer 1989, Marie's mother moved back to Santa Ana where she resumed living with Castaneda. Marie was now 14. Upon setting up housekeeping with Castaneda, Marie's mother organized the sleeping arrangements as follows: Marie and five-year-old Elizabeth would share a bed in Castaneda's bedroom. The mother would sleep in the other bedroom with four-year-old Fidel and nine-year-old Raul. According to Marie, her mother intended this arrangement to permit Castaneda's access to Marie for sexual purposes. She had no choice but to comply as Castaneda told Marie that her mother would beat her to death if Marie bothered her. Because her mother regularly beat her, Marie took the threat seriously.

From July 1989 until January 1992, the sexual abuse increased in frequency. During this period, Castaneda raped Marie three to four times a week.[3] Marie told a girlfriend that her stepfather was abusing her but could not bring herself to tell a teacher.

In January 1992, something happened that changed her mind. Early one morning, Castaneda got on top of her and young Elizabeth was awakened by the shaking bed. Elizabeth demanded to know what he was doing to Marie; Marie did not want her to know the terrible things her father did and turned Elizabeth's head away from them. Elizabeth cried but then fell back to sleep. The next day, Elizabeth demanded to know what her father was doing to Marie. Marie told her "nothing." Elizabeth then pressed the point by asking if her father did to Marie what he was doing to her. Marie was horrified. She could not believe Castaneda would abuse his own seven-year-old natural daughter. The next day, she went to one of her teachers and asked that he report her stepfather to the authorities.

Two weeks later, Jeanie Ming, a nurse for the Orange County Health Care Agency child abuse team, conducted a genital and pelvic examination on Marie. Her observations were that Marie's gynecological condition was consistent with long-term and regular penetration by a penis.

---

[3]There was one exception. During December 1989, the whole family journeyed to Mexico. No sexual abuse occurred while they were visiting Mexico, but recommenced immediately upon their return.

Little Elizabeth testified her father touched her on her genitals many times before she was removed from her family home and placed in foster care at the end of January 1992. Specifically, she remembered during Christmas vacation 1991 when Castaneda got on the bed where she was watching television. He then put his hands under her clothes and touched her genitals.

The parties stipulated that Marie's bed was searched, and the bedding examined after the last rape. Semen found on the bedding matched Castaneda's blood.

DISCUSSION

II

*Uncharged Acts of Misconduct**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III

*Sufficiency of Evidence for Counts 18-25*

 Castaneda asserts the prosecution failed to present evidence of his age to prove counts 18 through 25.[9] Because his age—which must be 10 years older than the victim's—is an element of the offense, he contends his motion for acquittal was improperly denied.[10] We disagree.

 The standard on review of a denial of a motion for acquittal is "the same as that applied by an appellate court in reviewing a conviction—whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged. [Citations.]" (*People* v. *Ainsworth* (1988) 45 Cal.3d 984, 1022 [248 Cal.Rptr. 568, 755 P.2d 1017].) The evidence before the jury to prove Castaneda was at least 10 years older than Marie was: (1) testimony from both Castaneda and Marie that when she was five, he was an adult man renting space from her adult godmother and soon thereafter married Marie's mother; and (2) Castaneda's physical appearance and presence before the jury. Does such circumstantial evidence support the jury's finding that he was at least 10 years older than Marie? We believe it does.

---

*See footnote, *ante*, page 197.

[9]Castaneda also argues there was no evidence of Marie's relative age. But Marie testified to her birthdate and the dates of the offenses. Thus, this argument is rejected.

[10]The motion was granted on count five, which the prosecution admitted there was no evidence whatsoever to support. We also note the defense failed to argue *at all* when it made the motion, stating only it was making the motion "for the record."

In *People* v. *Montalvo* (1971) 4 Cal.3d 328 [93 Cal.Rptr. 581, 482 P.2d 205, 49 A.L.R.3d 518], the defendant was charged with a narcotics violation, requiring proof the accused was not a minor. The prosecution objected to this, contending the language required them to prove a negative. This argument was successful at trial, and the jury was not instructed an element of the offense was proof the accused was 21 or older. The case was remanded because the statute demanded such a finding.

In dictum, however, the court discussed the proof necessary to meet the element of age. It was not limited to documents of actual age. " 'Experience teaches us that corporal appearances are approximately an index of the *age* of their bearer, particularly for the marked extremes of old age and youth. In every case such evidence should be accepted and weighed for what it may be in each case worth. In particular the *outward physical* appearance of an alleged minor may be considered in judging his *age*; a contrary rule would for such an inference be pedantically over-cautious.' [Citations.] . . . Similarly, a view of the defendant by the trier of fact in an appropriate case may be sufficient to support a finding that the defendant is an adult. [Fn. omitted.] In any event, the information . . . must contain the necessary language as to age and in jury trials, the jury must be properly instructed as to all of the elements of the offense." (*People* v. *Montalvo,* 4 Cal.3d at p. 335, italics in original.)

The jury was properly and specifically instructed that Castaneda had to be 10 years older than Marie when the offenses were committed. It had the testimony of both Marie and Castaneda that he was an adult, married to her mother when Marie was little more than a toddler. It also had its own observations of Castaneda's relative age. Although such evidence may not amount to *conclusive* proof that he was 10 years her senior, it was assuredly enough to permit the trier of fact to infer such, at least in the absolute absence of any contradiction by Castaneda.

Similar rules are followed in sister jurisdictions. For instance, in New Jersey physical appearance *alone* is sufficient to support a jury's finding if "any rational trier of fact [could] find physical appearance alone to prove age beyond a reasonable doubt." If, however, the physical appearance alone is not sufficient to prove the age beyond a reasonable doubt, as decided by the trial judge, some corroborative evidence—"no matter how inane"—of the apparent age is necessary. (*State in Interest of A.N.* (1993) 267 N.J.Super. 158 [630 A.2d 1183, 1186-1187] [A.N., a minor, was convicted of sexual assault on another child who had to be under 13 and at least 4 years his junior; A.N.'s appearance alongside the victim's presence in court sufficient alone to prove the fact.]; see also *State* v. *Lauritsen* (1978) 199 Neb. 816

[261 N.W.2d 755] [apparent age from defendant's appearance needs some corroboration, but met in this case because he was Ku Klux Klan member which required age of 18 for membership, he was drinking beer in a tavern at time of sex offense and witnesses referred to him as "man"].) In other states, appearance alone is sufficient to prove age. (See *Weaver* v. *State* (Ala.Crim.App. 1989) 568 So.2d 309; *State* v. *Zihlavsky* (La.Ct.App. 1987) 505 So.2d 761; *State* v. *Thompson* (Iowa Ct.App. 1985) 365 N.W.2d 40 [defendant's appearance sufficient to prove age and was corroborated by defendant's testimony that he had purchased beer and cigarettes]; *Com.* v. *Jones* (1983) 314 Pa.Super. 497 [461 A.2d 267] [defendant's appearance in court, coupled with his testimony that he married the victim's mother when the victim was about 4 was sufficient]; *Rich* v. *State* (Okla.Crim. 1954) 266 P.2d 476.) In all jurisdictions, the defendant's presence, subject to the jury's view is relevant, circumstantial evidence of age.

In the case before us, the jury received proper instructions requiring it to find Castaneda guilty only if he was 10 years older than Marie. Each juror observed him over the course of the four-day trial and heard him describe Marie as his stepdaughter who was a very little girl when he, as an adult, first met and married his wife. The guilty verdict reflects the reasonable conclusion he was *obviously* 10 years older than Marie, and his apparent age was corroborated by other testimony.

## IV

### *Sentencing**

. . . . . . . . . . . . . . . . . . . . . . . . .

## V

### DISPOSITION

The judgment is affirmed.

Wallin, J., and Bedsworth, J.,† concurred.

Appellant's petition for review by the Supreme Court was denied March 22, 1995.

---

*See footnote, *ante,* page 197.

†Judge of the Orange Superior Court sitting under assignment by the Chairperson of the Judicial Council.